(6 App. Div. 73.)

COVERT v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. EVIDENCE—EXPERT TESTIMONY.
    In an action for diverting a water course, it was claimed that the diversion was effected by sinking the foundation for an aqueduct which crossed the stream, whereby the water in the stream was drained off by percolation. *Held*, that it was proper to give expert testimony as to whether the sinking of the foundation of the aqueduct caused the diversion.

2. VERDICT—WHEN SET ASIDE AS EXCESSIVE.
    In an action for injuries to property, where there is no evidence of malice or wantonness, the rule that a verdict will not be set aside as excessive unless it appears to have been influenced by prejudice or passion on the part of the jury does not apply.

Appeal from circuit court of Kings county.

Action by Abraham D. Covert against the city of Brooklyn to recover damages for the diversion of a stream of water which supplied the power for a mill owned by plaintiff. From a judgment entered on a verdict in favor of plaintiff for $2,450, and from an order denying a motion for a new trial, defendant appeals. Affirmed on condition.

Argued before BROWN, P. J., and PRATT, CULLEN, and HATCH, JJ.

William G. Cooke, for appellant.
A. N. Weller, for respondent.

CULLEN, J. This is an action to recover damages for the diversion of water from a stream and mill pond owned by the plaintiff. The defendant constructed an aqueduct across the stream which supplied the water to the mill pond. It is not claimed that the course of the stream itself was diverted into the aqueduct, but it was contended that, by sinking the foundations for the aqueduct, and the construction of a culvert, the water in the stream was drained off, by percolation. That such an injury is actionable seems settled by authority. Van Wycklen v. City of Brooklyn, 118 N. Y. 427, 24 N. E. 179, and Covert v. Cranford, 141 N. Y. 521, 36 N. E. 597. The trial judge instructed the jury, very clearly, that

the defendant had the right to improve or use its own land, and so far as, by such improvement, it intercepted underground springs which otherwise might reach the stream, it was not liable; that to authorize a recovery the plaintiff must establish that the defendant's acts or structures had diverted or obstructed the water after it had become part of the running stream. This was a correct exposition of the law on the subject. There was evidence to sustain the claim of the plaintiff that the water was diverted after it became part of the stream, and the verdict of the jury must be taken as deciding that fact in the plaintiff's favor. The motion for a nonsuit was therefore properly denied.

On the trial the plaintiff sought, by the testimony of experts, to prove that the building of the aqueduct had caused the diversion of water from the stream. For this purpose he called civil engineers, and a hypothetical question was put to them, which assumed the facts testified to, as to the drying up of the stream, the method of the construction of the aqueduct across the stream, and the temporary means or appliances adopted to keep out the water during the construction of the foundations of the aqueduct and culvert. On this assumption the witnesses were asked what, in their judgment, was the cause of the drying up and disturbance of this stream of water. To this question the defendant objected, and the witnesses were allowed to answer, over defendant's objection and exception, that the construction of the conduit line had been the cause of the disturbance of the stream. There is no claim that the witnesses of whom this question was asked were not competent experts, nor is there any claim that the facts assumed in the hypothetical question were devoid of evidence to sustain them. The contention of the defendant is that the cause of the diversion of the water was not properly the subject of expert judgment, but was to be determined by the jury solely on the facts attending the construction of the aqueduct and the disappearance of the water. This contention cannot be sustained. In Van Wycklen v. City of Brooklyn, supra,—an action entirely similar to the one now before us,—where it was claimed that diversion was effected by driven wells, the witness was asked, "Was it possible for you to take, in those pipes, any water out of Springing creek?" This question was excluded. It was held, by a divided court, that the exclusion was proper. An examination of the prevailing opinion, however, shows that its exclusion was not sustained on the ground that the subject was not one for expert evidence, but because an answer would have been a mere naked opinion upon the precise question which the jury were to decide. It is there said by Judge Brown that if the question had called for a statement by the witness of any adequate cause, within his knowledge, .for the disappearance of the stream, it would have fallen within the principle of the Moyer Case, and have been admissible. Moyer v. Railroad Co., 98 N. Y. 645, was an action to recover damages to flat lands, along the Mohawk river, alleged to have been caused by an embankment .constructed in the river by the defendant. An engineer examined on the part of the defendant was

:asked whether, in his opinion, there were any adequate causes for the scouring of the water on the plaintiff's land. This question the court of appeals held competent, as it was put to the witness -on the assumption of an hypothesis which there was evidence in ·the case to sustain. The question in the case at bar seems to have been framed in exact accordance with the lines of the two cases ·cited. Its admission was therefore proper.

We are of opinion that the amount of the verdict exceeds the damages proved by the plaintiff. The plaintiff contends that the ·verdict should not be set aside on this ground, "unless it appears to have been influenced by a prejudice or passion on the part of the jury." The rule invoked has no application to a case of this char-acter. The action was for injury to property, and there was no ·element of malice or of wantonness in the defendant's act justifying the recovery of anything more than the actual damages proved. ·The plaintiff's son testified that the gross receipts of the mill had reached $1,400 per year; that $100 a year would equal the expenditure made for help additional to his own, or for repairs. He ·further testified that his own time was worth $3 a day. On this testimony, the net profit of the mill would be $400 a year. For a period of three years and a half,—the time from the commence-ment of work on the aqueduct to the bringing of the action,—this would amount to $1,400. It would have been, probably, more satisfactory, had the plaintiff shown the annual rental value of the mill rendered useless, and it may be that such evidence would have ·established a larger claim on his part. But, on the evidence ad-duced on the trial, we think that no verdict could have been ren-dered for more than the sum stated, $1,400.

The judgment and order appealed from should be reversed, and ·a new trial granted, unless plaintiff stipulates to reduce the verdict to the sum of $1,400, in which case the judgment, as reduced, should be affirmed, without costs. All concur.