ject, and which she was as peculiarly in a position to exercise. Such a disposition of property we are not bound to sustain."

I am convinced that, while the instrument in question is in form the will of Mrs. Ordway, it is in fact the will of William G. Chambers, and for this reason the judgment should be reversed, and a new trial granted. All concur.

(61 App. Div. 226.)

CROCKER v. MANHATTAN LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. May 17, 1901.)

1. BUILDINGS—PROJECTING WALLS—INJUNCTION—TRESPASS.
Where the lower part of defendant's building is on its own grounds, but the upper part projects over plaintiff's land, plaintiff may maintain an action for a mandatory injunction to require defendant to remove such projecting parts, since in such case ejectment will not lie, and, though plaintiff may maintain repeated actions for damages for the trespass so long as it shall continue, such action will at no time place him in the full enjoyment of his property.

2. SAME—EQUITABLE RELIEF.
Where, in an action for a mandatory injunction to compel the removal of defendant's wall overhanging plaintiff's land, the defendant answers, also praying equitable relief, the court may direct such judgment as equity requires.

3. SAME.
Where the cornices and upper wall of defendant's 16-story building projected a few inches over plaintiff's building, doing but little damage, while the removal of the wall would cause great damage to defendant and to its tenants, a judgment refusing an injunction requiring the removal of the wall, and awarding plaintiff full compensation in damages, with protection to plaintiff against defendant's acquiring a permanent right to encroach, should be affirmed.

4. SAME—SWINGING SHUTTERS.
Where defendant's building, standing on the line of plaintiff's land, has iron shutters, at the windows which swing out over plaintiff's land, plaintiff is entitled to a mandatory injunction restraining the maintenance of such shutters, and compelling their removal, since defendant is chargeable with knowledge that the shutters encroach on plaintiff's property rights, and are unlawful.

Appeal from special term, New York county.

Action by George Crocker against the Manhattan Life Insurance Company. From a judgment in favor of plaintiff for less than the relief demanded (66 N. Y. Supp. 84), plaintiff appeals. Modified and affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Eugene D. Hawkins, for appellant.
Edward S. Rapallo, for respondent.

HATCH, J. This action was brought for equitable relief to compel by injunction the removal of the northerly wall of the building of the Manhattan Life Insurance Company, No. 66 Broadway, together with iron shutters and cornices upon said wall, upon the ground that they project over the plaintiff's boundary line, and over-

hang and encroach upon plaintiff's adjoining property. The plaintiff is the owner of a parcel of land on the easterly side of Broadway, south of Wall street (No. 70 Broadway), extending through to New street. The premises are entirely covered by a four-story brownstone building, and were acquired by plaintiff by deed on the 14th day of July, 1897. The defendant is the owner of a parcel of land immediately adjoining the plaintiff's said premises on the south, also extending from Broadway to New street, which it acquired on the 6th day of April, 1892, upon which it erected in 1893-94 a 16-story building of iron, stone, and brick. The building upon the plaintiff's premises has stood for more than 20 years. The alleged causes of complaint are two: (1) That the north wall of defendant's structure, which is 300 feet high, overhangs its base, and encroaches upon plaintiff's land; (2) that the cornices and iron window shutters do likewise; and plaintiff asks that defendant be compelled to remove the encroachments. The defendant denies the encroachment and overhang of its wall, and alleges that plaintiff's wall overhangs its base, and encroaches upon defendant's property, and asks for a mandatory injunction for its removal. The encroachment of the defendant's cornices and of the window shutters, when open, is admitted. The alleged encroachment of defendant's wall divides itself into two parts,—an alleged overset of between two and three inches beginning at the roof of plaintiff's building, and the gradually increasing overhang from that point to the roof of defendant's structure, where, as it is averred, it is between four and six inches; making the total encroachment from six to nine inches, the testimony of the witnesses varying as to the extent. The trial court found and decided that defendant's wall at New street overhangs to the extent of $1\frac{1}{8}$ inches at the roof of plaintiff's building, and that between the roof of defendant's building and the roof of plaintiff's building defendant's northerly wall overhangs plaintiff's true southerly boundary line to the following extent: At the first cornice, $3\frac{1}{8}$ inches; at the second cornice, $3\frac{3}{4}$ inches; and at the third cornice, $4\frac{3}{4}$ inches. With these findings the appellant agrees. The trial court further found that defendant's wall at the roof of plaintiff's building set over plaintiff's roof $2\frac{5}{8}$ inches at the Broadway front and $1\frac{1}{8}$ inches at the New street front; but that, although the wall overhangs the plaintiff's building at the roof at the Broadway front, such overhang does not constitute an encroachment, for the reason that it does not overhang plaintiff's true southerly boundary line. Upon the trial this apparent encroachment at the Broadway front was attempted to be accounted for by the alleged fact that when the excavation was made in 1893 for the foundation of defendant's present structure, plaintiff's building slid into the excavation $2\frac{5}{8}$ inches, or thereabouts, and now rests upon defendant's land to that extent, and this is the basis of the defendant's alleged cause of action for the encroachment of plaintiff's building upon its land. It is the finding of the court, and the evidence supports the finding, that the defendant's wall projects over the roof of the plaintiff's building about $2\frac{5}{8}$ inches at the Broadway front, but that such projection does not carry the wall over defendant's true line at the surface of the street. The court has not

found that the plaintiff's structure, at the roof, overhangs upon the defendant's property. It is claimed that the court's finding in this respect is inconsistent, and such would seem to be the case, for, if the defendant's wall at the roof of plaintiff's building does not project over the defendant's line, then the wall of plaintiff's building at that point must project over the defendant's line, as one projection is necessarily dependent upon the other. The finding of the court that defendant's wall at this point does not constitute an encroachment is supported by the testimony, and it necessarily follows, from such fact, that there must be an encroachment upon the defendant's land at the roof of plaintiff's building. It may be that the defendant is the one responsible for such encroachment, but, however it may have been occasioned, the encroachment itself seems to be conclusively established upon the evidence and the findings of the court upon this subject. Unless, therefore, the defendant be entirely responsible for this encroachment, it is quite evident that it also might have been awarded some relief in respect of it; for, as to it, the encroachment is as well established as is the encroachment over the plaintiff's line by the wall of the defendant's building above plaintiff's roof. It does not appear that the court was requested to find, or refused to find, that the plaintiff's structure at the roof encroached over the defendant's line. If, however, it was material to the disposition of this controversy, it would probably be necessary, from the facts found and the evidence in the case, to decide that the plaintiff's wall did in fact encroach upon the defendant's land. As we view the case, however, neither the inconsistency in the findings, if it be such, nor the findings which have been made, are controlling in the disposition of this controversy, as the evidence appearing in the record, together with the findings, furnishes a sufficient basis for the adjustment of all the rights and liabilities of the parties to this action.

It is the contention of the plaintiff that he has resorted to the only remedy afforded him to obtain adequate relief, and it may be that he is right in such contention. There being no encroachment over his line upon the ground, ejectment would not lie. Such action would be fruitless of results, as no judgment could pass putting him in possession of his property above the surface of the ground. It seems to be conceded, however, and such is the law, that he might maintain an action at law to recover damage for the trespass, and would have a continuing right to maintain such action so long as the trespass continued. Uline v. Railroad Co., 101 N. Y. 98, 4 N. E. 536; Covert v. City of Brooklyn, 6 App. Div. 73, 39 N. Y. Supp. 744; Id., 13 App. Div. 188, 43 N. Y. Supp. 310. It cannot be said, however, that his right to maintain the action at law for damages furnished an adequate remedy upon the facts of the present case, as it would at no time place him in the enjoyment of his property. Upon this state of the law and the facts the plaintiff contends that not only is he authorized to maintain an action in equity, but that he is entitled, as matter of absolute right, as the only equitable relief which may be granted, or which the court is authorized to give, to a mandatory injunction requiring the defendant to take down the wall, or to resort to such measures as will remove the overhang from the plaintiff's premises. We think

this contention, as applied to the particular facts of this case, may not be sustained. It overlooks three essential things: (1) The plaintiff invokes the equitable aid of the court, and has voluntarily sought to compel its exercise. The defendant joins issue with the plaintiff in such court, and also demands of the court the interposition of its equitable powers for its relief. (2) The defendant, upon the facts found and the evidence, shows that, as to the overhang of the plaintiff's wall, it may become entitled to equitable relief similar to that to which the plaintiff claims to be entitled. (3) As both parties have sought the equitable forum for an adjustment of their rights and interests, the court is possessed of ample power to direct such judgment as equity requires, and in the accomplishment of such purpose may direct such judgment as will do equity between the parties invoking its jurisdiction; and, in order to accomplish this result, it may award both legal and equitable relief, dependent solely upon the consideration as to what will do equity between them. Clark v. Sawyer, 2 N. Y. 498; Bank of Utica v. City of Utica, 4 Paige, Ch. 399, 27 Am. Dec. 71; Curtis v. Fox, 47 N. Y. 299; Dudley v. Congregation of St. Francis, 138 N. Y. 451, 34 N. E. 281; Gall v. Gall, 17 App. Div. 318, 45 N. Y. Supp. 248. Upon the present record it appears that the plaintiff's structure consists of a four-story building, which in its present state of use is wholly as available as it would have been had the defendant's wall been constructed for the entire distance upon its true line. The damage which the plaintiff sustains by reason of the encroachment rests in the fact that when use is attempted to be made of the space above his building the encroachment of the defendant's wall, will necessitate the diminishing somewhat the thickness of the plaintiff's wall at the points of encroachment. It appears, however, that such a building as may be erected by the plaintiff will have for its support the wall of the defendant's structure, although not a party wall; and, further, that in modern construction the walls of a building are a mere screen, and are no longer used for the purpose of support of the building; it being supported inside of the walls, from the foundations up, according to varying plans of construction; and it is this part of the structure which supports the building, the walls as well as its other parts. It appears without dispute that, although the wall might be slightly diminished in thickness at the points of the overhang, yet such change in construction from the true line would not diminish the floor space in the building, and that for practical purposes of use it would be as safe and afford as much space as though the walls of each building stood upon the exact and true line. Upon the question of damages the plaintiff proved that the value of the building as it stood was $500,000, and that with the overhang of defendant's building as it existed at the time of the trial it was worth $495,000, the difference being $5,000. It is not necessary that we consider whether or not this was the correct measure of damage, as the plaintiff was permitted to prove it, and the defendant has accepted it. It may therefore be regarded as the proper measure of damage for this case. The testimony of this witness was not entirely satisfactory upon the subject, as it appeared that he based his opinion upon an encroachment at the street surface of the land, and the evidence

showed none, either at Broadway or New street. When his attention was called to this fact upon cross-examination, he eliminated that as a factor, but still adhered to the measure of damage by reason of the overhang above the ground. It seems clear, therefore, that, so far as the actual damage to the plaintiff is concerned by reason of this overhang, it is not such as to deprive him of the present beneficial use and enjoyment of his building, nor will it deprive him of the substantial benefit of any structure which he may erect upon his land, and whatever damage there is may be easily admeasured upon a money basis. In other words, the plaintiff does not show that he suffers irreparable injury by the existence of this overhang. It is easily apparent, therefore, that the plaintiff may receive a money compensation which will be adequate as a remedy for every injury which he has sustained.

The defendant's condition is entirely different. It appears that when it began the excavation for the foundation of its building it went down four or five feet below the cellar of the plaintiff's building, at which point it sunk caissons to bed rock, a distance of 54 feet. These caissons were filled in with concrete, and formed a foundation which would not settle. When the excavation below the cellar of the plaintiff's building was made, or at the time the work was being prosecuted, it was found necessary to shore up the plaintiff's building, and at the foundation it was supported upon needles, which held the building at that point perfectly secure, and upon the line. It was not practicable to hold the plaintiff's building above the ground by the plan adopted to hold it below, and it is claimed that by reason of insufficient shoring up of the walls, or by lateral pressure from adjoining buildings north of plaintiff's structure the walls of the building were forced to the south. However this occurred, the wall seems to have tilted over, and this accounts for the overhang at the roof. After the foundation of the defendant's structure was completed, it proceeded to erect its wall. The building itself was constructed of materials made according to certain dimensions, brought upon the ground, and placed in position. Some little difficulty was experienced by the defendant on account of the insufficient space towards the top of plaintiff's building, as it appeared there was lack of room for the material of the prescribed dimensions. This difficulty, however, was overcome, and, when the roof of the plaintiff's building was cleared, the wall was placed 2⅜ inches over the roof at the Broadway front, bringing the wall upon defendant's true line, and from thence the erection of the wall was continued. It is quite evident that it was the intention of the defendant to construct the walls of its building within its lines. The expense of the structure was between four and five millions of dollars. The lines of its land had been precisely located by surveyors, and the construction of the building committed to competent contractors. There is no pretense or claim that the defendant, in the construction of its wall, willfully and intentionally encroached upon the plaintiff's land. Such a course would have been suicidal to it, and no evidence in this record tends to establish that such was the fact. The wall, as it presently exists, is 300 feet high. It encroaches an inch and one-eighth over the defendant's line above the roof at the New street end. Beginning with the seventh or eighth

story of the Broadway end, it encroaches by varying degrees, until at the roof it is $4\frac{5}{8}$ or $5\frac{7}{8}$ inches. The interior construction upon this side of the building consists of iron or steel beams protected by the wall, and its elevator service is upon that side. The building is completely occupied, being leased to tenants for varying terms. It is impracticable to chip off the wall to the extent of the overhang, for the reason that it would expose the ironwork to the weather, interfere with the operation of the elevators, and invade the rights of tenants secured by lease. To take the wall down and rebuild the same will require an expenditure, according to plaintiff's testimony, of $50,000, and according to the defendant's testimony of $250,000. Whatever the actual cost might be, it is clearly evident that an enormous expense is involved, and the rights of a large number of persons will be invaded. This recital of the conditions of the respective parties serves clearly to show that the expense of the restoration of the wall of this building to the true line will inflict an enormous damage upon the defendant, entirely disproportioned to any benefit which will accrue to the plaintiff on account thereof. Under such circumstances we are called upon to consider whether the court, in the exercise of its equitable jurisdiction, can do justice between these parties, and preserve the substantial rights of each, without resort to a mandatory injunction compelling the removal of the defendant's wall.

It is a well-settled equitable principle that strict enforcement of a contract right will not be granted where such enforcement would impose great hardship upon the contracting party, with little or no corresponding benefit to the other party thereto. Trustees v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365. In this case the equitable power of the court was invoked for the purpose of enforcing a specific covenant which had been violated, and relief was denied for the reason that the circumstances existing at the time when the covenant was made had so far changed, and the premises to which it applied were no longer aided by it, that its enforcement would be oppressive upon the defendant, and of little value to the party seeking it, and that, therefore, it would be inequitable to enforce it. The principle has been many times asserted. Gray v. Railway Co., 128 N. Y. 499, 28 N. E. 498; Riedeman v. Light Co., 56 App. Div. 23, 67 N. Y. Supp. 391. There can be no difference in principle between the enforcement of a legal right created by covenant and the enforcement of any other legal right created by operation of law. The principle which grants or withholds equitable relief is precisely the same in each case. The law which vests in the plaintiff the right to have, enjoy, and use his land both above and below the surface of the ground is no higher in degree than would be the right to use the same land for any other purpose, secured to him by the covenant of another party; and, if the right to its enforcement may be denied in one case, it may also be denied in the other, for the equitable principle operates alike upon both. There is, therefore, no reason why equity may not consider, in the present case, the hardship upon the one side and the corresponding lack of benefit upon the other. Indeed, in the elevated railroad cases the right to injunctive relief has been denied where no damages arising out of the construction had been sustained, even though

70 N.Y.S.—32

it was admitted that the technical legal right of the plaintiff had been infringed (O'Reilly v. Railroad Co., 148 N. Y. 347, 42 N. E. 1063, 31 L. R. A. 407); and the same rule is enunciated in Garvey v. Railroad Co., 159 N. Y. 323, 54 N. E. 57. In the latter case the facts were found sufficient to authorize the relief asked for, while in the former it was denied. In principle both cases are alike. In the former it appeared that no damage was shown, but only a technical legal infringement, from which no damage resulted. In the latter no damages were proven, but the injury to the legal right was plain and unmistakable, resulting in damage to the owner. In the present case the infringement of the legal right and the existence of damage are both established, but the complete enforcement of the legal right works hardship and oppression upon the defendant, with comparatively slight corresponding benefit to the plaintiff. This brings us to a consideration of the question as to whether the equitable principle, which seems to be clearly established, is sufficiently elastic to admit of the award of money damages for the invasion of the right, instead of issuing the mandatory injunction. We believe that the principle is so elastic. It is to be borne in mind, as we have before observed, that both parties appear in this court demanding equitable relief. Under such circumstances, and the circumstances of this case, we think it established by authority, and also true in principle, that the court can retain jurisdiction of the case, and award the damages which the plaintiff might otherwise seek on the law side of the court. Phillips v. Thompson, 1 Johns. Ch. 131, 150, where the court says, after citing cases:

"In both these cases—which were bills for specific performance—the defendant had put it out of his power to perform the contract, and the court retained the bill, and referred it to a master to assess the plaintiff's damages. This appears to me to be a case under similar circumstances, and as proper as any that can arise for the application of the principle of those decisions. Justice demands that the plaintiff should have relief, and I am apprehensive he would be remediless without the aid of this court. The cases are numerous in which the court of chancery has caused damages to be assessed, either by an issue or by a master, at its discretion."

The same principle was applied in Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, and therein it was announced that one of the cardinal principles of the exercise of equitable jurisdiction is to prevent a multiplicity of suits, and, in order to attain such result, and adjust the rights of the parties, equity would award damages which might be recovered in an action at law, and direct, as between the parties to the action, the payment of a sum of money which measured the right of the party upon one hand, and compel therefor a conveyance of the property right which had been infringed upon the other. That was an action for the enforcement of a covenant between private parties; but, as we have already seen, there can be no difference in principle between such a case and the one we are now considering, and therein there was an award of money, and a direction to convey upon its payment. The doctrine of this case has never been questioned, and remains the law at this day. None of the cases relied upon by the plaintiff conflict with this view, but, on the contrary, support it. In Corning v. Nail Factory, 40 N. Y. 191, the plaintiff sought to obtain a permanent

injunction restraining the defendant from diverting a water course. Therein the right to the injunction was upheld, but it was so upheld for the reason that the defendant, on account of the expiration of its lease, had ceased to have any right whatever to divert the flow of the water as against the plaintiffs in the action. It was urged that the injunction should be denied, for the reason that great damage would be inflicted upon the defendant without corresponding benefit to the plaintiff. This view was rejected, not for the reason that the principle might not be applied in a proper case,—indeed, that was admitted,—but upon the ground that the plaintiff might make the same use of the water privilege which the defendant was making. In other words, it did not appear but that the plaintiff would derive the same benefit if his legal right was sustained, and the stream restored, as would the defendant in the present enjoyment of it. The fact of corresponding benefit existed, and mere damage to the defendant by being compelled to yield the right was not sufficient for the application of the principle; but therein the court recognized the rule as we do here. In Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282, there was a willful invasion by the defendant of the plaintiff's rights, and an absolute encroachment upon her land; consequently, the defendant never occupied any position where he could invoke the equitable aid of the court. On the contrary, he occupied the position of a willful trespasser with full knowledge, and, being such, he had no standing to invoke a single equitable principle in his behalf. In such a case great hardship and little corresponding benefit find no application whatever. In Ackerman v. True, 56 App. Div. 54, 66 N. Y. Supp. 6, the action was for an injunction to restrain an interference with easements of light, air, and access. The defendant answered by setting up that the plaintiff had an adequate remedy at law. The court held that the plaintiff was not entitled to an injunction, but retained the action for an assessment of damages. True, it undertook to give other equitable relief, but for such relief there was no authority. This court held that the only equitable relief to which the plaintiff was entitled, if any, was by mandatory injunction, and, this having failed, the court could not retain it for the assessment of damages. In that case, when the damages were sought to be proved, the defendant made immediate objection, claiming that it could not be established in that action, as upon such question he was entitled to trial by jury. The court overruled his objection, and this court held such ruling to be error. Therein there was no submission by the defendant of the controversy to the equitable jurisdiction of the court. He at all times objected to such jurisdiction, and raised his question at the earliest moment. Whatever was said in that case respecting the right of the plaintiff had sole reference to the facts appearing, and was properly said as applied thereto. It is true that in the present case the defendant has averred in its answer that the plaintiff had an adequate remedy at law, but at no time did it insist upon any such defense, or make any claim thereunder; on the contrary, it submitted itself and its rights solely to the equitable jurisdiction of the court, and, in addition thereto, demanded affirmative equitable relief. It is evident, therefore, that none of these cases are authority for the contention of

the plaintiff. Here the parties are all before the court; each seeks its equitable interposition; and under such circumstances, under the authorities we have cited, the court is possessed of ample power to determine every question involved in accordance with equitable principles. Reaching this conclusion, we see no reason why the judgment of the trial court, so far as it required a release of the damage and the grant of an easement to maintain the wall upon the payment of $5,-000, should not be upheld. The damages which have been awarded are certainly all which the plaintiff's proofs show him entitled to recover on account of the existence of the overhang; consequently, no fault can be found with the amount of the award. The enormous cost of taking down the wall, and the hardship which it would entail upon the defendant, are met by no corresponding benefit to the plaintiff which is not satisfied by the damages awarded. The equitable principle, therefore, which denies a mandatory injunction in such cases, was properly applied, and finds fair adjustment in the judgment of the trial court. It is quite possible to embody in a judgment a protection of defendant's right to maintain its wall on the payment of damages, without requiring a grant of the easement, but the result is not different if the easement be conveyed; and in Amerman v. Deane, supra, it was decided that the execution of the conveyance was appropriate and proper. In either case it is a mere matter of establishing the right in the defendant upon the payment of the money. In this respect, therefore, we reach the conclusion that the judgment should be affirmed.

The relative positions of the parties with respect to the swinging shutters and the projecting cornices are entirely different. The defendant knew, or, if not, was chargeable with knowledge, that these structures encroached upon the plaintiff's property rights. They are, therefore, unlawful in their character, and defendant may invoke no equitable principle for their protection. The principle enunciated in the cases we have cited condemns their existence. In this respect, therefore, the plaintiff became entitled to a mandatory injunction restraining their maintenance and compelling their removal. The court is not authorized, under such circumstances, to permit their retention for any period, or couple the same with any conditions. This part of the judgment, therefore, should be reversed, and a mandatory injunction compelling their removal awarded to the plaintiff.

The judgment should be modified as above indicated, and, as modified, affirmed, with costs to the appellant. All concur.