HENRY A. OWENSON, Plaintiff and Respondent, v. E. R. BRADLEY, as Administrator of the Estate of Rhoda L. Kumrine, Deceased, and E. R. Bradley, Defendants and Appellants.

(31 A.L.R. 1296, 197 N. W. 885.)

**Quieting title — evidence held to sustain judgment for plaintiff.**

1. In an action brought to determine adverse claims to a certain lot, the facts disclosed by the record are held to support the judgment of the trial court quieting title in the plaintiff.

**Injunction — mandatory injunction will not issue as of right to compel removal of encroaching wall.**

2. The defendants, being the owners of a lot adjoining the lot described in the complaint and having, in their answers, asked for alternative relief, in case their right to the lot in dispute be denied, by way of mandatory injunction,

---

Note.—(1, 2) Mandatory injunction to compel removal of encroachment by adjoining owner, see notes in 14 A.L.R. 831; 31 A.L.R. 1302; 14 R. C. L. 453; 4 R. C. L. Supp. 903.

to compel the removal of a concrete foundation and brick wall which form part of a building erected by the plaintiff on the lot in dispute but which encroached upon the adjoining property of the defendants, occupying a wedge-shaped strip 60 feet long, 3 inches wide at one end and 16¾ inches at the other, it is *held:*

Where a party, through innocent mistake, so constructs a wall that it encroaches slightly upon adjoining property, a mandatory injunction will not . issue, as a matter of right, to compel the removal of the structure.

**Injunction — owner of adjoining property on which permanent building wall slightly encroaches confined to action at law, or may accept actual damages.**

3. Where one, through innocent mistake, so constructs a permanent wall of a building that it encroaches upon the adjoining property to a slight extent and where the cost of removing it is great compared to the injury suffered by the owner of the adjoining premises, such premises being vacant, a mandatory injunction will be denied and the injured party remitted to his action at law, with an option, however, to accept an award of damages adequate to cover the value of that portion of the lot upon which the encroachment stands.

Opinion filed March 17, 1924.

Adjoining Landowners, 1 C. J. § 78 p. 1228 n. 87. Injunctions, 32 C. J. § 64 p. 77 n. 5, 7.  Quieting Title, 32 Cyc. p. 1372 n. 26.

Appeal from the District Court of Foster County, *Nuessle,* J.
Modified and affirmed.

*Flynn, Traynor & Traynor,* for appellants.

The rule is that where one encroaches by a building upon the land of another, ejectment is the proper remedy. If it were not so the adverse possession of the wrongdoer would ripen into a perfect title as against the owner. McDivett v. Bronson (Neb.) 163 N. W. 761.

The controversy now before us is as to the possession of the soil itself. It is true that it is below the surface, but it is tangible; and the defendant is completely in possession of a portion of the soil of the plaintiff. He has ejected the plaintiff from the premises, and taken actual possession thereof himself. There has been a complete ouster of the plaintiff's possession. It is true that it does not interfere with the right of the plaintiff to use the surface in any way that he may see proper, so long as he does not desire to utilize the surface in any way that is dependent upon his ownership of that which is below it. If, however, he desires to use his property in a manner which requires ex-

cavations to be made, the moment that he undertakes to do this he finds the possession of his property in some one else. The mere fact that the thing sought to be recovered is below the surface is no reason why ejectment is not the appropriate remedy. Dr. Warvelle, after referring to the conflict of decisions in reference to one whose rights have been interfered with by overhanging walls and the like says: "Hence it would seem that, if one party, building upon his own land, encroaches upon the adjoining land of his neighbor, no question should arise as to the right of the latter to maintain ejectment against the former; and, upon principle, it would further seem that it is immaterial whether the encroachment is upon the surface of the soil, above it, or below it. In no event should a landowner be obliged to submit to invasion, or compelled to part with his property, or portion thereof, upon the mere payment of damages by a trespasser." Wachstein v. Christopher (Ga.) 11 L.R.A.(N.S.) 917, 57 S. E. 511; Warvelle, Ejectment, p. 33. See also Newell, Ejectment, 11.

The result of denying the injunction is to allow the wrongdoer to compel innocent persons to sell their right at a valuation. The defendant is not interfering with a doubtful easement under a mistaken view of its rights. Now, at all events, if not from the beginning, it simply is dispossessing, or trying to dispossess, a man of his land, by wilful wrong; and its argument that it should not be restrained in proceeding must be that it can make more money out of the plaintiff's property than the plaintiff can, if it is allowed to take it. The defendant's outlay does not better its case on the question of a prohibitory injunction, and we see no reason why it should not be required to restore the premises to their original condition. Lynch v. Union Inst. for Sav. (Mass.) 33 N. E. 603.

The maintenance of the portion of the foundation wall of the building which had without right been projected over the boundary line into the soil of the adjoining owner, is a continuing trespass or nuisance and for the injury inflicted by it upon him, one succeeding to the title of the adjoining property may maintain an action against the wrongdoer. Milton v. Puffer, 207 Mass. 416, 32 L.R.A.(N.S.) 1010, 93 N. E. 634.

No remedy at law is adequate owing to the uncertainty of the measure of damages to afford complete compensation. In one sense it is

taking from complainant her property without condemnation and without due process of law. No person can be permitted to reach out and appropriate the property of another and secure to himself the adverse engagement and use thereof, which, in a few years, will ripen into an absolute ownership by adverse possession. Wilmarth v. Woodcock (Mich.) 25 N. W. 475. See also: Norton v. Elwert (Or.) 41 Pac. 926; Paft v. Washington (Cal.) 154 Pac. 1073.

*Kelly & Morris,* for respondent.

The buildings occupied a small part of the plaintiff's land and did not materially interfere with the enjoyment of the balance, and compensation in damages could be made. It was held that an injunction was not a matter of right, and in this case was refused. Methodist Episcopal Soc. v. Akers, 167 Mass. 560, 46 N. E. 381.

The action was under the Code to compel removal of the joists placed in the adjoining owner's wall without his consent. The court states that under the Code in such an action, equitable jurisdictions could be exercised, but further states that no extraordinary circumstances warranting the exercise of such jurisdiction were shown in this case and refused to order the removal of the joists. Rankin v. Charless, 19 Mo. 490, 61 Am. Dec. 574; Crocker v. Manhattan L. Ins. Co. 31 Misc. 687, 66 N. Y. Supp. 84.

The wall of the defendant encroached three inches at one end and ten inches at the other. In erecting the building the defendant acted in good faith and the encroachment was unintentional. The adjoining lot was for sale and there was no special or peculiar use made of it which required the strip covered by the wall. It was ordered that if the defendant should pay certain damages, which were assessed upon the delivery of a deed to the strip from the plaintiff, the injunction for removal would be disallowed, otherwise injunction to issue. Goldbacher v. Eggers, 38 Misc. 36, 76 N. Y. Supp. 881, affirmed in 82 App. Div. 637, 71 N. E. 1131.

A mandatory injunction was refused to order the removal of a fence which encroached on a railroad company's right of way, and the plaintiff was relegated to its remedy at law. Louisville & N. R. Co. v. Taylor, 138 Ky. 437, 128 S. W. 325.

Equity jurisdiction having once been invoked, may be retained for

the assessment of damages.   Brande v. Grace, 154 Mass. 210, 31 N. E.
633; Cobb v. Massachusetts Chem. Co. 179 Mass. 423, 60 N. E. 790.

It is not disputed that equity has jurisdiction to order the invasion
of the plaintiff's premises to be abated.   The grounds of such jurisdic-
tion as usually stated are the want of a complete remedy at law, since
full compensation for the entire wrong cannot be obtained in an action
at law for damages, and to prevent a multiplicity of actions since a
plaintiff might be compelled to bring a succession of actions in order
to obtain relief.   See 1 Pom. Eq. Jur. § 252; 5 Pom. Eq. Jur. 496–
516.

BIRDZELL, J.   This is an action to determine adverse claims to lot 8,
in block 11, of the original town of Grace City.   It involves also the
encroachment of a cement foundation and brick wall upon the adjoin-
ing lot 9.   From a judgment quieting title to lot 8, in the plaintiff, and
assessed damages in favor of the defendant E. R. Bradley, on account
of the encroachment on lot 9, the defendants appeal.   The case is here
for trial de novo.   The facts are substantially as follows: One W. T.
Wilcox of Redwood Falls, Minnesota was the owner of lot 8 in block 11.
The defendant Rhoda L. Kumrine was the owner of the adjoining lot 9
and was operating thereon a hotel in a two story structure.   Being
advised of impending danger of having the light shut out of her hotel
in case a building should be erected on lot 8, she, through her banker,
entered into negotiations for the purchase of lot. 8.   Pursuant to these
negotiations, Wilcox executed a deed, blank as to grantee, and sent it
to the bank, apparently with instructions to deliver to a purchaser.
Mrs. Kumrine agreed to buy the lot for $225 and paid toward the pur-
chase $100, giving her note for the balance, which note was pinned to
the deed and both were retained by the bank pending payment.   A re-
ceipt was given Mrs. Kumrine, evidencing the payment of $100 on
account of the purchase, which was signed by Jas. K. Banks, the presi-
dent of the bank.   This took place on March 1, 1916.   On March 4th
Mrs. Kumrine gave to the defendant Bradley an instrument denomi-
nated in the briefs an option contract.   It purports to be an exclusive
option on lots 8 and 9, block 11, for the period of thirty days at a price
of $3,000, Bradley to have all in excess of the price named as his com-
mission for securing a buyer.   The "option" contains this language:

"It is agreed that should the party giving this option sell to parties the said Bradley brings here he shall have lot 8 as his commission for interesting such buyer and only lot 9 shall be sold with the hotel. If buyer insists on having lot 8 with the hotel, Bradley's commission to be $225 for getting such buyer even if the deal is closed after the thirty days." This "option" contract was not recorded, and it is claimed that within the thirty days Bradley talked with one Robert Harbke and also with one Chandler with the view to their purchase of the property, offering to sell to them both lots 8 and 9 for $3,000. On April 5, 1916, immediately after the expiration of the option, a contract was entered into between the defendant Rhoda Kumrine and Harbke for the sale of the property, and Harbke immediately entered into a similar contract for its sale to Chandler. In these contracts the property was described as lot 9 and the purchase price was $2,875. Harbke paid $100 in cash which Mrs. Kumrine received, and the bank took Harbke's note for $125, substituting it for the note of Mrs. Kumrine, which represented the balance on the purchase price of lot 8. There is testimony to the effect that it was the intention of the parties that both lots 8 and 9 were being sold to Harbke and in turn to Chandler and that the parties intended both lots to stand as security for the deferred payments of the entire consideration. On or about April 10th, the plaintiff Owenson completed negotiations with Harbke for the purchase of lot 8, paying the latter $115 in cash and giving his note to the bank for $125, which was substituted for Harbke's note. Owenson's name was inserted in the Wilcox deed as grantee of lot 8 and the deed delivered to him and by him left at the bank for safekeeping. (The delivery at this time is disputed, but, under all the evidence, it was delivered the 3rd of May following.) The cashier of the bank testified that Owenson could have had the deed any time as his note was good for the $125. When the defendant Bradley learned of the negotiations regarding lot 8 he caused a notice of lis pendens to be filed in the office of the register of deeds on April 28, 1916, which notice is entitled E. R. Bradley v. Rhoda L. Kumrine and states that such an action is pending in the district court of Foster county for specific performance, requiring the defendant to convey to the plaintiff lot 8, in block 11, etc. On May 1, 1916, Rhoda L. Kumrine conveyed to E. R. Bradley lot 8 for a consideration of $225, and Bradley placed the deed of record on the same

day. At about this time Owenson began excavating preparatory to constructing a building on the lot, and on May 3rd he recorded his deed. On Sunday, the 7th of May, early in the morning, Bradley moved a cook car on the back end of the lot, took the trucks from under it and began to occupy the premises by living there. In the evening of that day an altercation ensued between Owenson and Bradley, resulting in the latter being forcibly ejected. Thereafter an action was instituted in which a restraining order was obtained, which prevented further interference by Bradley with plaintiff's possession. Owenson proceeded with the construction of his building which is a brick building one story high. Some time later Bradley ascertained that the concrete foundation and brick wall of this building encroached upon lot 9 and he caused an affidavit to that effect to be filed of record. The building erected is 60 feet long and encroaches upon lot 9 as follows: The concrete foundation below the grade line extends into lot 9 at one end 3 inches and progressively further toward the other end of the building to an extreme of $16\frac{3}{4}$ inches, and the brick wall above the grade line encroaches in a similar manner from $2\frac{1}{2}$ inches to 7 inches. The parties who had purchased the hotel property on lot 9 having defaulted in their contract, Bradley purchased the property from Mrs. Kumrine and later moved the hotel building to another lot. Owenson having started this action to determine adverse claims to lot 8, the defendants Bradley and Rhoda Kumrine answered separately, the former setting up his title derived from Mrs. Kumrine in the manner stated above and also the encroachment of the building on lot 9. The relief demanded in Bradley's answer is that his title to lot 8 be quieted and that he recover the reasonable value of the use and occupation during the period covered by the plaintiff's possession and that, in the event such relief be not granted, he recover of the plaintiff the reasonable value of the use and occupation of that portion of lot 9 trespassed upon by the wall of the building erected on lot 8; that the extent of the encroachment be determined and that plaintiff be required to remove the same from lot 9 forthwith. In addition, there was a prayer for general equitable relief. Rhoda L. Kumrine died before the trial of the action and the defendant Bradley, as her administrator, was substituted. Her answer is consistent with the claims of Bradley and, for additional

relief, claims damages to the hotel property by reason of shutting out the light.

In our opinion, there can be no serious question as to the correctness of the trial court's findings and conclusions with respect to the title to lot 8. In fact, the contention of the defendants is such as to defeat Bradley's right to this lot under his so-called option contract. The defendants contend that the contract between Rhoda Kumrine and Harbke was intended to embrace both lots 8 and 9, whereas the description in the written contract is limited to lot 9. If it be true that it was intended to embrace both lots, Bradley had no interest therein for the reason that his option contract provided that, in the event the purchaser desired to purchase both lots 8 and 9, his commission should be $225 instead of a conveyance of lot 8. Hence, Bradley's title to lot 8, through the so-called option contract, is defeated by his own contentions. We are also of the opinion that the title of Rhoda Kumrine and Bradley to lot 8 is disproved by the evidence in the case. It is clear that the name of Rhoda Kumrine was never inserted in the deed as grantee and it nowhere appears that the sale to her was so far completed that she could demand the delivery of the deed. On the contrary, she apparently assented to a repayment of the amount that she originally paid ($100) toward the purchase of this lot and to a surrender to her of her note representing the balance of the purchase price and to the substitution for this note of the note of Harbke with the deed remaining in the bank. We are of the opinion that, under the evidence, the bank was justified in holding the Wilcox deed subject alone to the payment of the Harbke note and not subject to the full performance by Harbke of the contract for the purchase of the hotel property. From this, it follows that when later the bank took Owenson's note in lieu of Harbke's and inserted the name of Owenson as grantee in the deed, title was conveyed to the latter and that Rhoda Kumrine never acquired title and consequently never conveyed it to Bradley.

It is next argued by the appellant that the judgment of the trial court is erroneous in that the damages awarded to Bradley are not adequate and in that no damages were awarded to Mrs. Kumrine. As the question of the proper award of damages to Bradley is involved with the removal of the wall, we shall consider it in that connection. As to

the damages to Mrs. Kumrine on account of the encroachment of the wall on lot 9 during the period of her ownership, there can be no doubt that she did sustain some damage. It is not evident, however, in view of the short period of her ownership following the construction of the wall, that her damage was more than nominal. She is clearly not entitled to damages on account of the shutting off of the light from the hotel. See 1 R. C. L. 399; 1 C. J. pp. 1127 to 1231. In view of the result, this court will not modify the judgment to make a merely nominal award of damages.

The principal contention on this appeal concerns the relief to be granted on account of the encroachment of the wall upon lot 9. It appears that this was due to a mistake of the contractor in measuring from a certain stake. At any rate, it appears not to have been the result of any intentional trespass. While there is much said in the briefs with respect to the bad feeling between Bradley and Owenson, we fail to see wherein this feeling contributed to the location of the wall over the line, as the adjoining property was at that time owned by Mrs. Kumrine. The record shows that the hotel has been removed from lot 9 and consequently that this wall, through the mistake of Owenson and his contractor, extends a few inches over on a vacant lot, the whole of which does not exceed in value $250. The removal of the wall would require an expenditure of about $1500. Under these facts, the appellant asserts that the only question is whether or not a court of equity will exercise its powers to require the plaintiff to remove the wall and contends that this question should be resolved in the affirmative.

The defendant and appellant Bradley asked for affirmative relief by way of a mandatory injunction to compel the removal of the encroachment. Had he not done so, the issues in this suit would have been limited to those concerning the title to lot 8. His contention is, in substance, that, as the owner of lot 8, he may properly invoke the jurisdiction of a court of equity, as a matter of right, to compel the removal of the encroachment, since legal remedies are not adequate to give full relief. See Hahl v. Sugo, 169 N. Y. 109, 61 L.R.A. 226, 88 Am. St. Rep. 539, 62 N. E. 135. The question thus presented is one that is not free from difficulty. Assuming an encroachment and the inadequacy of legal remedies to reinstate the owner in possession and enjoyment of his property, it would seem that equity should afford the nec-

essary relief, and that the principle of the balance of inconvenience, applicable generally to temporary injunctions, should have no application where equity is called upon to vindicate a clear, legal, property right. However, we are of the opinion that the best considered cases and the weight of authority support the proposition that equity will not interfere by granting a mandatory injunction in such a case, even to vindicate a clear legal right, where the defendant is innocent and where greater injustice will be done by compelling a removal than by awarding damages for what is in reality a compensable injury. On this subject Pomeroy, in his work on equitable remedies, 5 Pomeroy's Equity Jurisprudence, 2d ed. § 1922, says:

"If a defendant's building encroaches slightly on the plaintiff's land and the plaintiff's damage is small, while the cost to the defendant of removing it is great, should a court of equity disregard wholly the injury which granting relief to the plaintiff will cause the defendant, and issue the injunction? Or, should it balance the injury which its course will cause in granting or in withholding relief, and be influenced by this consideration in its decision? . . . It should be premised in the beginning that the question cannot arise except in a case in which some sufficient reason for equity jurisdiction, such as irreparable injury or the prevention of a multiplicity of suits, exists; in other cases, the injunction will be refused on the simple ground that the legal remedy is adequate. . . .

"Assuming, then, that the only question before the court is the propriety of balancing the injury that may be caused to the parties by the decree, and remembering that the question does not arise except when equity has jurisdiction of the case because the plaintiff's legal remedy is inadequate, it should be noted that to deny the injunction is (1) 'to allow the wrongdoer to compel innocent persons to sell their right at a valuation' (Tucker v. Howard, 128 Mass. 361) and (2) to refuse him altogether any equitable relief in a case where, on the ground of avoiding a multiplicity of suits at least, he is clearly within one of the most frequently given reasons for assuming jurisdiction, and where, also, his injury may be irreparable. In view of the situation it is clear that the plaintiff's prayer will not readily be denied, and it can safely be said that the argument based on the balance of injury to the defendant will be availing only in a limited class of cases. On the other hand, it

is a general rule of equity not to exercise its extraordinary jurisdiction when it will operate inequitably and oppressively. Starkie v. Richmond, 155 Mass. 188, 29 N. E. 770. The problem presented is, therefore, to strike a medium rule between these principles that, as fairly as may be, will do justice."

The author then calls attention to the fact that the question has arisen most frequently in Massachusetts and New York and quotes from the decisions in those states to show that the principle applied is substantially the same in both. For instance, in the case of Lynch v. Union Inst. for Sav. 159 Mass. 306, at page 308, 20 L.R.A. 842, 34 N. E. 364, the Massachusetts court says:

"Where, by an innocent mistake, erections have been placed a little upon the plaintiff's land, and the damage caused to the defendant by the removal of them would be greatly disproportionate to the injury of which the plaintiff complains, the court will not order their removal, but will leave the plaintiff to his remedy at law."

And again, quoting from the supreme court of New York in the case of Goldbacher v. Eggers, 38 Misc. 36, 76 N. Y. Supp. 886, we find the principle stated as follows:

"It must be remembered that a *willful trespasser* cannot in this way acquire an inch of land, because the mandatory injunction must issue as to him; that in other cases where the injury to the plaintiff is irreparable the mandatory injunction will issue, and permanent damages will not be awarded; that *where the granting of an injunction would work greater damage to an innocent defendant than the injury from which the plaintiff prays relief, the injunction could be refused absolutely, and the plaintiff compelled to seek his remedy at law.* In such case the plaintiff would have to proceed either in ejectment, where the sheriff might not consider it his duty to deliver possession by taking down the wall (Bowie v. Brahe, 4 Duer, 676; Baron v. Korn, 127 N. Y. 224, 228, 27 N. E. 804), and it would be impracticable, if not impossible, for the plaintiff to regain actual possession of the strip occupied by the wall, or by successive actions for the continuing trespass, where damages only could be awarded to the time the action was commenced (Uline v. New York C. & H. R. R. Co. 101 N. Y. 98, 54 Am. Rep. 661, 4 N. E. 536). But in equity, in order to do full justice between the parties, the plaintiff is awarded such full compensation as

will make him whole, and the defendant is given the opportunity to pay the same, instead of taking down his wall. The plaintiff cannot be permitted to both receive the value and keep the land. He has preferred to seek the equitable interposition of this court, and he must himself do equity."

For other cases where the granting or withholding of a mandatory injunction to compel the removal of an encroaching wall was determined by the equitable consideration of comparative injury to an innocent defendant balanced against the plaintiff's injury and where relief was denied, see Harrington v. McCarthy, 169 Mass. 492, 61 Am. St. Rep. 298, 48 N. E. 278; Methodist Episcopal Soc. v. Akers, 167 Mass. 560, 46 N. E. 361; Mercantile Library Co. v. University of Pennsylvania, 220 Pa. 328, 69 Atl. 861; Crocker v. Manhattan L. Ins. Co. 31 Misc. 687, 66 N. Y. Supp. 84, 61 App. Div. 226, 70 N. Y. Supp. 492; Coombs v. Lenox Realty Co. 111 Me. 178, 47 L.R.A.(N.S.) 1085, 88 Atl. 477. See also note in 14 A.L.R. 831.

In the case at bar the encroachment was due to an innocent mistake as to the boundary line and was not discovered until after the building was erected upon lot 8. The property is located in a small town where there is little, if any, growth in population and business activity. The encroachment is upon a lot that had long been vacant at the time of the trial of this action and which in all probability will continue vacant for a long period of time. Its value does not exceed $250. Hence, the damage to the owner is exceedingly small as compared to the cost of removing the encroaching structure. We are of the opinion that, in these circumstances, the mandatory injunction should not issue. However, we are further of the opinion that the defendant Bradley who asked only for a mandatory injunction should not be compelled in this action to part with title to the strip occupied by the plaintiff's wall, although he might elect to do so upon being adequately compensated. On the other hand, we are of the opinion that the plaintiff in this action to determine adverse claims and who has accepted the issues presented by the defendant's answer, and who is apparently willing to pay a liberal award of damages, should have the strip in dispute if the defendant recovers as damages its full value. We are therefore of the opinion that the judgment appealed from should be modified so as to make express provisions to these ends. The judgment as modified will be:

That the mandatory injunction prayed for by the defendant shall not issue, but that the defendant Bradley have and recover of the plaintiff, as damages for the encroachment, $125, upon condition that the said defendant file in the court below a conveyance of the strip occupied by plaintiff's wall, embodying therein a release of all damages on account of the trespass. In default of the payment of the $125 on the condition aforesaid, within twenty days after the filing of the remittitur herein, the mandatory injunction to issue, and in case of the failure of the defendant to file the conveyance and the release aforesaid within thirty days after the remittitur, that the judgment for damages against the plaintiff be satisfied and the defendants remitted to their remedy at law.

As so modified the judgment is affirmed with costs to the respondent.

CHRISTIANSON and JOHNSON, JJ., and PUGH, Dist. J., concur.

BRONSON, Ch. J. concurs in result.

Mr. Justice NUESSLE, being disqualified, did not participate; Honorable THOMAS H. PUGH, Judge of the Sixth Judicial District, sitting in his stead.