No. 16,407.

GOLDEN PRESS, INC. *v.* RYLANDS ET AL.
(235 P. [2d] 592)

Decided August 6, 1951.   Rehearing denied September 4, 1951.

Mr. ARTHUR A. BROOKS, JR., Mr. LEO W. KENNEDY, for plaintiff in error.

Mr. HOWARD ROEPNACK, Mr. ROBERT J. SULLIVAN, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFFS Rylands and Reid owned a parcel of land fronting on West Colfax Avenue, Jefferson County, upon which were located their residence and garage and some rental cottages. Defendant Golden Press, Inc., constructed a one-story brick and cinder block business building on its property which adjoined plaintiffs' property on the east. According to plaintiffs' survey here unchallenged, the west wall of defendant's building is two inches clear of the lot line at the front or south end, is exactly on the line at the north end, and is approximately 160 feet in length.

In the action here involved, plaintiffs allege that in constructing the building defendant caused its foundation and footings to extend from two to three and a half inches upon plaintiffs' land. They further allege that during its construction defendant trespassed upon plaintiffs' property by permitting an I-beam to fall on their garage roof; by destroying a flower bed and line fence; by disturbing a graveled driveway, and by walking upon and digging into plaintiffs' land. They allege still further that "in the operation of the defendant's business and rental operation, the defendant permits, causes and occa-

124

sions people to drive into and across the premises of the plaintiff by directing people to park in the rear and failing to disclose to the people an entrance to the east of the building, and the patrons of the store are misled by the signs directing them to park in the rear." Plaintiffs prayed for injunction requiring that defendant remove all footings and foundations upon their property and that defendant, its servants, agents and customers be enjoined from trespassing upon their property and for damages in the sum of $1750 and exemplary damages. Upon issue raised by general denial the case was tried to a jury as to the issue of damages alleged by trespass, the court reserving the determination of the issue of injunction. On the issue of damages the jury returned a verdict in favor of the defendant. The court then found encroachment as alleged and granted mandatory injunction requiring that defendant's projecting footings be removed from plaintiffs' property, and further decreed "that the defendant take action to properly direct drivers of vehicles where they should drive and park so as to stay on defendant's property, and the defendant shall remove any signs and directions that tend to confuse drivers of vehicles and lead them to believe that they are to drive or park on the property of plaintiffs"; then by separate order set aside the verdict of the jury and sustained plaintiffs' motion for a new trial, on the ground that there was no evidence to support it.

█ Defendant specifies and argues error in setting aside the verdict of the jury and ordering a new trial as to the issue of actual and exemplary damages. However, that order was discretionary and not a final judgment to which a writ of error lies, and there was no election to stand on the case made as in *Mooney v. Carter,* 114 Colo. 267, 160 P. (2d) 390.

█ Challenge is also raised as to expert witness fees allowed to plaintiffs' surveyor Coberly and his assistant, on the ground that there was no evidence as to the services performed or their value. The court was advised

by the testimony of these witnesses as to their qualifications and the work which they had performed, and had knowledge of the time spent in giving testimony. The fees allowed were reasonable for their services in attending and testifying at the trial; their testimony was essential to establishing the property line between the parties and the amount of encroachment, and, under our statute there was no error in the allowance made therefor.

■ ■ Error is specified to the portion of the injunctive decree requiring defendants to take action to direct drivers and to remove signs tending to confuse drivers. As to this issue the only evidence as to signs or instructions after the completion of the building was related to signs apparently issued by tenants rather than by defendant, and that evidence disclosed no sign directing people to park on plaintiffs' land or properly tending to mislead the public. Moreover, a judgment must be definite and certain in itself. "It must fix clearly the rights and liabilities of the respective parties to the cause, and be such as defendant may readily understand and be capable of performing." 49 C.J.S. 191, §72. "The rights of the parties under a mandatory judgment whereby they may be subjected to punishment as contemnors for a violation of its provisions, should not rest upon implication or conjecture, but the language declaring such rights or imposing burdens should be clear, specific and unequivocal so that the parties may not be misled thereby." *Plummer v. Superior Court,* 20 Cal. (2d) 158, 124 P. (2d) 5. Lacking in this essential requirement, the portion of the decree above referred to may not stand.

There remains for consideration the portion of the decree requiring defendant to remove the footings of its building where they encroach upon the property of the plaintiffs. Ordinarily, mandatory injunction will issue to compel removal of encroaching structures, but it is not to be issued as a matter of course. On appeal to the court for an equitable remedy, the court must consider the peculiar equities of the case. A study of many decisions

discloses no specific and universally-accepted rule as to encroachments. Even in jurisdictions like Massachusetts, in which it has been declared that mandatory injunction for removal of encroachment can only be denied where estoppel or laches is shown (*Beaudoin v. Sinodinos*, 313 Mass. 511, 48 N.E. (2d) 19), there are numerous cases where injunction has been refused in the absence of those defenses. See cases cited as exceptioned in *Geragosian v. Union Realty Co.*, 289 Mass. 104, 193 N.E. 726, 96 A.L.R. 1282. Generally in other jurisdictions such harsh rule is not followed. Sometimes a slight and harmless encroachment is held to be within the rule "de minimis," as in *Tramonte v. Colarusso*, 256 Mass. 299, 152 N.E. 90, and *McKean v. Alliance Land Co.*, 200 Cal. 396, 253 Pac. 134, and generally the courts require that he who seeks equity should do equity and come with clean hands. *Tramonte v. Colarusso, supra; McKee v. Fields*, 187 Ore. 323, 210 P. (2d) 115.

█ Where the encroachment is deliberate and constitutes a willful and intentional taking of another's land, equity may well require its restoration regardless of the expense of removal as compared with damage suffered therefrom; but where the encroachment was in good faith, we think the court should weigh the circumstances so that it shall not act oppressively. 5 Pomeroy's Equity Jurisprudence, page 852, section 508. While the mere balance of convenience is not the proper test, yet relative hardship may properly be considered and the court should not become a party to extortion. Restatement of the Law, Torts, §941. Where defendant's encroachment is unintentional and slight, plaintiff's use not affected and his damage small and fairly compensable, while the cost of removal is so great as to cause grave hardship or otherwise make its removal unconscionable, mandatory injunction may properly be denied and plaintiff relegated to compensation in damages. *Owenson v. Bradley*, 50 N.D. 741, 197 N.W. 885, 31 A.L.R. 1296, Ann. 14 A.L.R. 831, 31 A.L.R. 1302, 76 A.L.R. 1287; *Nebel v.*

*Guyer,* 99 Cal. App. (2d) 30, 221 P. (2d) 337; *Mary Jane Stevens Co. v. First Nat'l Bldg. Co.,* 89 Utah 456, 57 P. (2d) 1099.

In the case before us issue was raised in the argument as to whether or not the encroachment was intentional. There was no finding on this issue by the trial court and the decree is not necessarily predicated upon intent. In the absence of proof to the contrary there is a presumption that men act in good faith and that they intend to do what they have the right to do. Prior to the building of the wall, plaintiffs and defendant each employed a surveyor, but neither was called as a witness and the results of their surveys are not disclosed except that, as stated by plaintiff Reid, before there was any digging done plaintiffs employed Prouty to survey and defendants employed Linn to survey "and there seemed to be a little difficulty in their agreeing. Mr. Prouty came out and made another survey, and Mr. Linn came out and made another survey and, of course, all this time the building was progressing." Plaintiff Rylands testified that she called Prouty to survey twice "because there was trouble between the lines. They had called their surveyor, and they weren't satisfied, and we weren't satisfied, and Mr. Prouty was called back to resurvey, to look the figures over, and the lines," during the course of construction. There is no indication from the record as to whether or not these surveyors agreed after their resurveys. Plaintiffs rely entirely as to the location of the line upon the survey by Coberly and his assistant, who were employed by plaintiffs and made their survey just prior to the trial and long after the wall was completed. Plaintiff Rylands' brother, Thomas P. Nother, upon whom plaintiffs relied to show knowledge and intent as to the line on the part of defendant's agents, testified as to Coberly's survey: "He found out their north end of their building was right on the line, and the south end of their building was a little bit inside the line, that is how I determined that they were over with their footings so far." With refer-

ence to the earlier surveys, witness Nother testified that before the concrete was poured for the foundation, he informed Mr. Ernst who was superintendent of construction that his building was about eight inches over the line and Ernst replied, "You're wrong, we have got our own surveyor. He has put us on the line"; that witness answered, "Well, I am not going to argue about it, I am warning you, you are over your line," and that thereupon the superintendent had the laborers move the forms over.

Defendant's witness Argo, who had charge of constructing the wall, testified that he had a survey line run by Linn and they dug the hole for the footings right straight down to the property line; that the lady next door had made a statement that they were on her property and they had another survey run and "the surveyor told us we better move over, as I remember, two inches, and we did." He further testified, "We weren't going to form that footing, and then the people next door made a little fuss about us being on their property, so we put a form in for that footing, so it would be on our side."

There is disclosed continued argument by plaintiffs with representatives of defendant during construction of the wall as to trespassing on their lands, but we find no evidence from the record challenging the good faith of defendant's representative in locating the footings.

Again we note that while plaintiffs were continually complaining as to trespass of the workmen on their property, they took no steps for injunction or other legal determination of the disputed line until after both the foundation and upper wall were completed.

Further, we note that the encroachment here complained of is very slight. It is conceded that the wall above the foundation does not project over the property line and that the only encroachment consists of a projection of the footings a distance of two inches at the middle, increasing to three and a half inches at the north end. The top of these footings is about seven feet below

the surface of the ground and they go down to nine feet below the surface. They constitute no interference whatever with plaintiffs' present use of the property as a driveway and iris bed, and the only testimony as to future damage was to the effect that if plaintiffs wished to build to their line with a basement, they would have to detour around this slight projection of defendant's footings.

The testimony indicates that the value of plaintiffs' lands is approximately $200 per front foot, so that if defendant had taken the entire strip of three and a half inches both at and below the surface, its value would have been only about $55, and the value of the portions extending from seven to nine feet below the surface and only along the rear eighty feet of wall would appear to be very small. Plaintiffs, at the trial, refused defendant permission to enter upon their property for the purpose of chipping off the encroaching footings with a jack hammer, and demanded that they be removed from defendant's side of the land, if necessary by tearing down the wall. The expense and hardship of such removal would be so great in comparison with any advantage of plaintiffs to be gained thereby that we think it would be unconscionable to require it, and that under all the circumstances disclosed mandatory injunction should have been denied by the trial court, with permission for plaintiffs to proceed, if desired, in damages.

Accordingly, the injunctive decree is reversed and the case remanded for further proceedings, if desired, consistent herewith.

MR. JUSTICE HILLIARD not participating.