# $\mathfrak{Cases}$

# FOURTH DEPARTMENT

# APPELLATE DIVISION,

## $\mathfrak{October},$ 1900.

---

MARY S. BURKE, Appellant, *v.* CHARLES HENDERSON, Respondent.

*Deed — description of the property conveyed — effect of a reference therein to a map on which a street is laid out on a line differing from the one, at the time, in actual use — estoppel, by acquiescence in the building of a house and fence.*

Hosea Rhodes and Hiram Dean, who owned a plot of land at the intersection of Union and Coleman streets in the city of Olean, conveyed a part of it to one Ryan, by a deed which described the land conveyed as "a portion of the north-east corner of block fifteen, according to a map of said village made by T. J. Gosseline, Esq., bounded and described as follows : Commencing at a point in the south bounds of Coleman street, 90 feet west of the southwest corner of intersection of Coleman and Union street; running thence west," etc. Ryan built a house upon his lot and located it by erecting a fence ninety feet west of Union street, as that street was then used and occupied. Thereafter Rhodes conveyed to Dean his interest in the remainder of the plot by a deed which described it as "being in block fifteen of said village according to a map thereof made by T. J. Gosseline, bounded and described as follows: Beginning at the intersection of the west bounds of Union street with the south bounds of Coleman street, running thence west on the south bounds of Coleman street, 90 feet." Nine years after Ryan's purchase, Union street was resurveyed, according to the Gosseline map, and the west line thereof located about eleven feet further west than the west line of the street as it had been opened and used prior to such survey.

*Held,* that the west line of Union street, as used and existing at the time of the execution of the deeds, was treated by the parties as a monument;

That the parties contracted with reference to that monument as a matter of fact, and that if the map line was subsequently found to be different from the line of occupation, the latter must control;

That the reference to the Gosseline map, contained in the deed to Ryan, did not operate to incorporate the map into the deed, but that, if it did, the line of the street as actually opened and used must control.

*Semble,* that as Dean and Rhodes allowed Ryan to build his house and fence without making any suggestion that he had not properly located his lot, they would be estopped from claiming that the eleven feet in dispute should be taken from Ryan's land.

APPEAL by the plaintiff, Mary S. Burke, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Cattaraugus on the 1st day of November, 1899, upon the report of a referee dismissing the plaintiff's complaint upon the merits.

The description contained in the deed from Hosea Rhodes and wife to Hiram Dean, under which the plaintiff claims title, is as follows: " All that tract or parcel of land situate in the village of Olean, County of Cattaraugus and State of New York, being in block fifteen of said village according to a map thereof made by T. J. Gosseline, bounded and described as follows: Beginning at the intersection of the west bounds of Union street with the south bounds of Coleman street, running thence west on the south bounds of Coleman street, 90 feet; thence south on a line parallel to the west bounds of Union street, 33½ feet; thence east on a line parallel to the south bounds of Coleman street, 90 feet to Union street; thence north along the west bounds of Union street, 33½ feet; thence east on a line parallel to the south bounds of Coleman street, 90 feet to Union street; thence north along the west bounds of Union street, 33½ feet to the place of beginning."

The description contained in the deed from Dean and Rhodes to Ryan, under which the defendant claims title, is as follows: " All that tract or parcel of land situate in the village of Olean, County of Cattaraugus and State of New York, distinguished as a portion of the northeast corner of block fifteen, according to a map of said village made by T. J. Gosseline, Esq., bounded and described as follows: Commencing at a point in the south bounds of Coleman street, 90 feet west of the southwest corner of intersection of Coleman and Union street; running thence west on the south bounds of Coleman street to the east bounds of land owned by Mary Ward, 35 feet more or less; thence south along the east bounds of said Mary Ward's land, 73 feet and six inches more or less, to the north

boundary of land held °under contract by Mary A. Bateman, on a line parallel with Union street; thence east along the north line of the said Bateman land and parallel with Coleman street, 35 feet more or less; thence north on a line parallel with Union street, to the place of beginning."

*Cary, Rumsey & Hastings* for the appellant.

*Fred L. Eaton* for the respondent.

Judgment affirmed, with costs, upon opinion of the referee.

All concurred.

The following is the opinion of the referee :

WILLIAM G. LAIDLAW, Referee :

The action is ejectment.   Union street in Olean runs north and south and is the principal street in the city; Coleman street runs west from Union at right angles to Union; the plaintiff's lot, by her deed, is a corner lot bounded east by Union thirty-three and one-half feet, and north by Coleman ninety feet, and west by a line parallel to Union; the defendant's lot, by his deed, fronts on Coleman and is bounded north by Coleman thirty-five feet, and its eastern boundary is a line parallel with Union at the distance of ninety feet west from the western boundary of Union.   The lots of the parties, therefore, adjoin, the western boundary of the plaintiff's lot being, in part, the eastern boundary of the defendant's lot.   There is a fence separating the lots of the parties, and the plaintiff's contention is that this fence is located on the ground eleven feet too far east, and he seeks to recover in this action this strip which plaintiff claims is a part of her lot.   The defendant is in possession of the strip, claiming it as a part of his lot.   There is no clash in the description of the deeds of the parties.   The description in each case starts at the point where the south line of Coleman intersects the west line of Union, and the plaintiff has ninety feet on Coleman and the defendant thirty-five feet on the same street.

The difficulty has all arisen from the fact that by a recent survey of the lines of Union street for paving purposes, the western boundary of that street has been located about eleven feet farther west at

the point in question than it had ever before been located or used by the public prior to such survey.

Since the description of the lots of both parties start in the western bounds of Union street and run west on the south bounds of Coleman, the effect of this new line of Union is to take this strip of land, eleven feet wide on Coleman, from the defendant's lot and include it in the plaintiff's; starting in the new line of Union, there is not land enough for both parties; it would lack this strip eleven feet wide, and the question is who must lose this strip, or rather which line of Union street, the old or the new, as between these parties, is the correct starting point in the description in their deeds.

The common source of title is Dean and Rhodes, who were grantees in a deed made by Ramsey and wife, dated May 16, 1885, which embraced the lands of the parties to this action with other lands in one description. Dean and Rhodes conveyed to Ryan by deed dated April 2, 1886, a portion of the premises they got of Ramsey. The premises so conveyed to Ryan are the premises now owned by the defendant who holds title to the same by mesne conveyances containing the same description as in the deed to Ryan. In the spring of 1886, shortly after Ryan bought the lot, he built a house on it which is still standing and occupied by the defendant.

The plaintiff's lot is a part of the premises which Dean and Rhodes bought of Ramsey and it was first conveyed as a separate lot by a deed dated December 18, 1886, by which Rhodes conveyed to his cotenant, Dean, his interest in the lot; this is the lot owned by the plaintiff, who holds the title through mesne conveyances containing the same description as in the above deed from Rhodes to Dean.

In the spring of 1897, nine years after Ryan purchased and built his house, a survey of Union street was made by the city for paving purposes, and upon that survey the west line of Union street was established about eleven feet farther west than the west line of the street as it had been opened and used by the public prior to such survey. This survey is based upon the location of the street lines on the Gosseline map (so called), and the new line must be taken to be the correct line of the street according to that map, and as before stated, there could be no trouble between the parties as to the line if the street line, as located on the ground prior to the recent survey, is taken as the correct line, because in that event, the plaintiff would

have all of her land, called for by her deed, lying east of the defendant's fence, standing on the east line of his lot.

It is evident that the question between the parties is to be determined as things existed in the spring and summer of 1886 upon the conveyance of Dean and Rhodes to Ryan; the plaintiff has no better right than Dean and Rhodes would now have if they still owned her lot. Now, there can be no doubt that Dean and Rhodes intended to sell, and Ryan intended to purchase, a lot thirty-five feet front on Coleman and lying east of Mary Ward's east line and west of a line parallel to the western bounds of Union, at the distance of ninety feet west of said boundary, and Ryan's lot was located on the ground accordingly, if we take the line of occupation of Union street as the starting point; Ryan built his house on the lot and the fence marking his eastern boundary, which is still standing or another in its place. The parties must have intended the old line of Union because the survey of the street was not made till nine years after the conveyance to Ryan, and, therefore, the new line could not have been in the minds of the parties, and there is no suggestion in the evidence tending to show that the line of the street as opened and used was not the true line as the parties understood it at the time Ryan's deed was given.

Mary Ward's lot fronted on Coleman, and the east line of her lot is a line parallel to the west bounds of Union at the distance of 125 feet west therefrom, and the plaintiff's contention would take 11 feet off the east side of the Ward lot and include it in the defendant's lot. When the Ryan lot was located and Ryan's house built, Dean and Rhodes both lived in the neighborhood, and Rhodes went past Ryan's house daily as it was being built, and both Dean and Rhodes, who then owned the plaintiff's lot, stood by and saw Ryan build the house and erect the fence without making any suggestion that the lot was not properly located on the ground; the house evidently cost several times the price of the land; and Dean and Rhodes owning the land east of Ryan's lot and what is now the plaintiff's land, I do not see why they would not be estopped from saying now that they owned this strip in dispute; but as this question was not raised on the trial, I prefer to put my decision on other grounds; justice would seem to require that when the city established the

new line, Dean and Rhodes, if they still owned the plaintiff's lot, would have to lose the part of their lot taken by the city instead of their grantee Ryan; it was not Ryan's land the city took; it was the land of Dean and Rhodes.

Judge ANDREWS, in *Masten* v. *Olcott* (101 N. Y. 158), says: " Grants are supposed to be made with reference to an actual view of the premises." Chief Judge JEWETT, in *French* v. *Carhart* (1 N. Y. 102), says: "It is a cardinal rule in the construction of contracts that the intention of the parties is to be enquired into and if not forbidden by law, is to be effectuated."

So important was this rule deemed that it was made a section of the Revised Statutes (1 R. S. 748, § 2), and see notes of the revisers to the sections, where they say the intention, amongst other things, is to put deeds upon the same footing as personal contracts so far as interpretation is concerned, and this rule as to intention must be regarded as the cardinal rule of interpretation.

But the plaintiff's real contention in the case is this: It is pointed out that in all the deeds from Dean and Rhodes in the defendant's title, the defendant's lot is described as " part of block number fifteen in said village, according to a map thereof made by T. J. Gosseline, Esq." The map was put in evidence and Union street is platted on this map as 115½ feet wide, and block No. 15 is bounded on the east by Union and the plaintiff contends that by the words above quoted the effect is to read into the description in the deed of the defendant's lot the map lines of the block, particularly the east line of the block which by the map is the west line of Union street, and that the west line of Union street by the survey of the street made in 1897 is the true map line and the true line in fact of the street, and, therefore, that the new line of the street must be taken as the line of the street intended in the description in the defendant's deed; in other words, the plaintiff contends that the words in the deed referring to the Gosseline map oblige us to take the new line of the street in the place of the old line as the line intended by the deed.

This contention of the plaintiff, I think, cannot be sustained; defendant's lot is not a subdivision of the map; it is perfectly described in the deed without reference to the map. Coleman street is not on the map; the length of all the lines is given in the deed; the direction of the lines and their relative position are estab-

lished by the street lines and Mary Ward's land, and these street lines and Mary Ward's line are open, visible boundaries on the ground. The words " being a part of block number fifteen," etc., add nothing to the description ; the description would be perfect without these words, but the words have their full effect because the defendant's lot is part of block 15, so that part of the description is satisfied. The effect of adopting the plaintiff's contention would be to read into the deed words not there qualifying the words " west bounds of Union street," and limiting these words to make them mean the platted line of the map instead of the line of occupation ; this, I think, would be a strange construction and would defeat the intention of the parties and work injustice ; it is always to be kept in mind that the west line of Union street is referred to solely to enable Ryan to know where the land lay which he was purchasing, and the parties to the deed could only mean the line of the street · as it had existed at all times prior to the new survey, and as it existed when Dean and Rhodes sold to Ryan, and the description in the deed does not call attention, even by implication, to any other line.

The reference to the map was simply to designate the block and it stops there.

But even if the map is read into the deed, it does not help the plaintiff, because if the map line of the street is different from the street line as actually opened and used, the latter, as between Dean and Rhodes and Ryan, must control. This is a well-settled rule. ( *Van Wyck* v. *Wright*, 18 Wend. 157 ; 4 Am. & Eng. Ency. of Law [2d ed.], 803, 804, 805, tit. " Boundaries," and notes ; 2 id. [1st ed.] 502.)

To conclude, I treat the west bounds of Union street as used and existing as a monument on the ground, and I hold that the parties contracted with reference to that monument as a matter of fact, and that if the map line differed from the line of occupation, the latter must control in view of the authorities just cited.

I see no material difference in principle between this case and the case of *Barrows* v. *Webster* (70 Hun, 597 ; affd., 144 N. Y. 422). This leads to a dismissal of the plaintiff's complaint upon the merits.