(38 Misc. Rep. 36.)
## GOLDBACHER v. EGGERS.

(Supreme Court, Special Term, New York County. May, 1902.)

1. ADJOINING LANDOWNERS—ENCROACHMENT—INJUNCTION.

Defendant, in building a six-story flat house, unintentionally encroached on an adjoining vacant lot by a strip 10 inches by 3 inches in width by 33 feet in length. The lot was for sale, and plaintiff made no special use of it, requiring the use of the encroachment. *Held*, that equity would not, in the first instance, grant plaintiff a mandatory injunction, compelling removal of the wall, but would retain jurisdiction, and give plaintiff damages and costs. on receipt of which she must convey to defendant the strip and release him.

2. SAME—DAMAGES.

Where defendant built a six-story flat house, and unintentionally encroached for a few inches on plaintiff's land, the measure of damages is the amount by which the selling price of the premises trespassed upon has been reduced by the wrongful act of the defendant.

3. SAME.

Code Civ. Proc. § 1499, providing for the bringing of actions where the real property in issue consists of land not exceeding six inches in width, on which there stands a building partly on it and partly on the adjoining lot, does not apply, though a part of the property consists of the strip of land not exceeding six inches in width, where no building had been erected on the land of the plaintiff abutting on defendant's wall.

Action by Nina Grace Goldbacher against George W. Eggers to compel removal of the wall alleged to encroach on plaintiff's premises. Decree on conditions.

Goldbacher & Ackerman (Joseph N. Goldbacher, of counsel), for plaintiff.

George E. Hyatt (A. Walker Otis, of counsel), for defendant.

CLARKE, J. This is a suit to compel the removal of a wall alleged to encroach upon plaintiff's premises, and to recover damages. The only point at issue is whether defendant's westerly wall stands upon plaintiff's lot, No. 3114 Third avenue. The plaintiff claims that defendant's wall encroaches over her easterly line on a wedge-shaped strip 10 inches wide on the street or north front, 3 inches wide in the rear, and running back 33 feet and 4 inches. The defendant denies any encroachment. It is conceded that the plaintiff's easterly boundary and the defendant's westerly boundary are the same line. The plaintiff takes title under a deed describing her lot as "beginning at a point on the southerly side of Third avenue distant seventy-five (75) feet southwesterly along the line of said Third avenue from a point where the westerly line of the Port Morris Branch of the New York and Harlem Railroad crosses the southerly line of said avenue." The defendant takes title under a deed describing his lot, in the same language, as beginning at a point 50 feet from the point where the westerly line of the railroad crosses the southerly line of Third avenue, and thence southwesterly along said avenue 25 feet; that is, to the point which is described as the point of beginning in the plaintiff's deed, and 75 feet from the point where the westerly line of the railroad crosses the southerly line of Third avenue. In 1887 the premises were part of a larger tract which was sold under partition, and both plain-

76 N.Y.S.—56

tiff's and defendant's remote grantors obtained their deeds from the referee in that partition. The original tract, as described in the judgment of partition, takes the same starting point as described in the plaintiff's and defendant's deeds, and the premises were advertised and sold according to that description. In Elliott v. Lewis, 10 Hun, 486, it is held, "The survey must commence at the place designated for its commencement in the deed, unless, perhaps, it clearly appears that to adopt it would destroy the grant." The point of beginning is clearly defined in the deeds, and, if it is ascertainable by proof, the location of the premises must be determined by commencing at such point. Both sides called city surveyors as witnesses. The testimony of the defendant's surveyor, who determined the distance from the old angle of Third avenue, does not materially help, because he testified that he made no measurements east of the defendant's lot; that is, toward the railroad. The other surveyor for the defendant testified that he measured the distance from the westerly line of the railroad, and found it to be 75 feet to the wall in question. The railroad at its intersection with Third avenue runs through a cut bound by a retaining wall. The witness testified:

"We took the westerly side of that wall as a starting point. The wall was uncovered and dug out, * * * and, from the actual location of the stones on that wall, the location of the line of Port Morris wall, with the southerly line of Third avenue, was made on the ground, and the measurement of 50 feet taken from there westerly along Third avenue for the determination of the beginning of Mr. Egger's lot."

The city surveyor, who testified for the plaintiff, obtained his starting point in a different way. He first found the middle points between the rails of the single track in the cut, and, connecting these points, established a line midway between the rails. Then, by taking several measurements east and west from this middle line of the track, he verified its position as the middle line of the 40-foot right of way. Having thus determined the middle line of the right of way, several points distant 20 feet westerly from that line at right angles thereto were established, and, being connected, the westerly line of the right of way was obtained. Where this westerly line intersected the southerly side of Third avenue was taken as the point of crossing described in the deeds. This starting point was compared in its location with the same or corresponding point as shown upon the final tax map, the damage and benefit maps, and the original map of the acquisition of the 40-feet right of way of the railroad, and its position verified by measurements from monuments on Third, Brook, and St. Ann avenues. From this point 75 feet were measured along the southerly side of Third avenue, and the point of beginning described in the plaintiff's deed ascertained, and her easterly boundary line established. If there were any evidence that the map or theoretical line of the railroad was different from the line of the railroad as actually opened and used at the time of the delivery of the deeds, the latter would control. Burke v. Henderson, 54 App. Div. 157, 66 N. Y. Supp. 468. In Smith v. Stacey, 68 App. Div. 521, 73 N. Y. Supp. 1022, the court says, "The rule seems to be well established that the parties will be assumed to have

acquired title with the visible street boundaries in mind, rather than those laid out on a map." But there is no evidence in this case of any difference between the physical and theoretical boundary at the time the deeds were delivered, and it does not appear that there was a retaining wall at that time. The parties could have determined whether they took the wall, or the theoretical line of the railroad as it appeared upon the maps, and whether they took the one line or the other is a question of fact. Barrows v. Webster, 144 N. Y. 422, 39 N. E. 357. The deeds make no mention of any wall. Neither party took measurements from the top of the wall, which is on a level with the street, and which the plaintiff located somewhat inside the theoretical line to allow for the taper on the other side. There is no evidence that the parties intended the measurement to be taken from the bottom of a retaining wall, to locate which it was necessary to excavate. To learn the intention of the parties, we may refer to the map in the partition suit which is the source of both parties' title. It is conceded that the premises in question are the same as shown on the map, and that the description of the original plot and deeds of the separate lots were drawn in accordance with that map. Under these circumstances the line of the railroad described in the deeds is not a retaining wall now standing upon the premises, but the boundary line of the railroad property as shown on the map. The plaintiff, with precision, determined this westerly line, and by actual measurements therefrom established the true boundary line between the plaintiff and defendant's property. I therefore find that defendant's wall encroaches upon plaintiff's lot as claimed. In equity the obligation to remove may be placed directly upon the party who caused the wall to be erected. Where the defendant is a willful trespasser, the plaintiff, as a matter of strict right, is entitled to a mandatory injunction directing the defendant to remove his wall. Lyle v. Little, 28 App. Div. 181, 50 N. Y. Supp. 947; Baron v. Korn, 51 Hun, 401, 4 N. Y. Supp. 334; Id., 127 N. Y. 224, 27 N. E. 804. In such case damages are not given for permanent injury to the property, and the plaintiff recovers only his damages up to the entry of the judgment, and at the same time secures an injunction which prevents the future trespass. Pappenheim v. Railway Co., 128 N. Y. 436, 445, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486. In Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282, the court said:

"Damages * * * are not to be awarded upon the assumption of permanent injury, as the judgment does not and cannot operate as a purchase of the right to have the wall remain as at present constructed."

But where the trespass was not willful, another rule may apply. In the recent case of Crocker v. Insurance Co., 61 App. Div. 226, 70 N. Y. Supp. 492, it is said:

"In Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282, there was a willful invasion by the defendant of the plaintiff's rights, and an absolute encroachment upon her land. Consequently the defendant never occupied any position where he could invoke the equitable aid of the court. On the contrary, he occupied the position of a willful trespasser, with full knowledge, and, being such, he had no standing to invoke a single equitable principle in his

behalf. In such a case, great hardship and little corresponding benefit find no application whatever."

The action was to compel the removal of a wall several hundred feet high, which overhung the plaintiff's property a few inches. There was no pretense or claim that the defendant, in the construction of its wall, willfully or intentionally encroached upon the plaintiff's land. The court found that the expense of restoring defendant's wall to the true line would inflict an enormous damage upon the defendant, entirely disproportionate to any benefit which would accrue to the plaintiff; that the actual damage to the plaintiff was not such as to deprive him of the present beneficial use and enjoyment of his premises, nor of the substantial benefit of any structure which he might erect upon his land, and whatever damage there was might be easily admeasured upon a money basis. The defendant did not insist upon its defense that the plaintiff had an adequate remedy at law, but submitted itself solely to the equitable jurisdiction of the court, itself demanding equitable relief. Under those circumstances, although the plaintiff insisted upon his right to a mandatory injunction, the court gave compensatory damages. In Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584, the action was to restrain the violation of a covenant running with the land, prohibiting the erection of any tenement house. The surrounding neighborhood had been mostly built up with flats, and the tenement house erected by the defendant was a large one. The court of appeals affirmed a refusal to grant a permanent injunction, but fixed the permanent damages, and awarded a restraining injunction until such damages were paid. In Lyle v. Little the court, in reference to granting an injunction, said:

"If it had been shown, by reason of any special circumstances presented, that this would be a hardship or inequitable, and, if the plaintiffs expressed a willingness to take in lieu thereof damages, the court might have been justified in fixing and awarding such damages as would compensate the plaintiffs; such damages being alternative relief fixed as a favor to the defendant to prevent the greater injury which would result to him if obliged to take down his wall."

In Isear v. Burstein, 30 Abb. N. C. 71, 24 N. Y. Supp. 918, where plaintiff asked for an injunction or for damages,—a case in many respects similar to the one at bar,—Justice McAdam granted compensatory damages.

From these cases it appears that where the plaintiff insists upon his right, and the defendant is a willful and intentional trespasser, a mandatory injunction will issue; in case the plaintiff expresses a willingness to accept damages in lieu of an injunction, permanent damages may be awarded; in case the defendant has not willfully or intentionally trespassed, and submits to the equitable jurisdiction of the court, a mandatory injunction will not be granted, where its enforcement would work great hardship upon the defendant, with little or no corresponding benefit to the plaintiff, and where the injury to the plaintiff may be fully satisfied by the award of damages. In such case the relief granted is alternative, giving the defendant the opportunity to make the plaintiff whole. The reasons given in the cases

for entertaining such suits in equity are to prevent irreparable injury for which the plaintiff has no adequate remedy at law, and to prevent a multiplicity of actions. Where the injury is shown to be reparable by a money compensation, equity may yet retain jurisdiction, to prevent a multiplicity of actions and award compensatory damages. As Haight, J., said in Amerman v. Deane, "This action is in equity, and one of the objects sought is to avoid a multiplicity of actions which might be brought in case only past damages could be recovered." And in Corning v. Nail Factory, 39 Barb. 326; Id., 40 N. Y. 191,—it was said, "The resort to an equitable forum makes the relief comprehensive, and avoids a multiplicity of suits." The plaintiff's land is a vacant lot of irregular shape. Before this suit was commenced the defendant had erected upon his land a six-story brick flat, the westerly wall of which encroaches upon the plaintiff's lot. In erecting his building the defendant acted in good faith, and without any knowledge that his wall encroached on plaintiff's land. The defendant had a survey made by a city surveyor, and before the brickwork was started he called on the surveyor again for the purpose of verifying the position of the walls. It does not appear that there was any dispute as to the boundary line at the time the building was erected, or that either party then knew of the trespass. The defendant has not pleaded or urged upon the trial that the plaintiff has an adequate remedy at law, but comes into equity alleging his good faith, and praying that the injunction be denied. The defendant made no objection when damages were sought to be proved herein, and has made no demand for the assessment of damages by a jury, but has voluntarily submitted to the equitable jurisdiction of this court, himself presenting evidence as to the amount of permanent damages to be considered in case the encroachment were established. The plaintiff makes no special or peculiar use of her lot which requires the use of the strip encroached upon. The lot is for sale, and, although diminished in value, it is just as available for purposes of building or sale as heretofore. Under the circumstances, the court may award money damages for the invasion of the right, instead of issuing a mandatory injunction. The measure of damages is the amount by which the selling price of the premises trespassed upon is reduced by the wrongful act, and in determining the amount of damage the court may use its own judgment and experience, aided by the evidence presented. Isear v. Burstein, 30 Abb N. C. 71, 24 N. Y. Supp. 918. The plaintiff's expert placed the reduction in the selling price at $1,000, and the defendant's at $300. Upon the entire case, the damages are fixed at $600.

Section 1499 of the Code of Civil Procedure does not apply to this case, although part of the property consists of a strip of land not exceeding six inches in width, because no building has been erected upon land of the plaintiff abutting the defendant's wall. A recovery of damages does not therefore of itself transfer to the defendant the title to the strip encroached upon, but the execution of such a conveyance is appropriate and proper. In McSorley v. Gomprecht, 30 Abb. N. C. 412, 26 N. Y. Supp. 917, it was suggested that the complaint be amended so as to demand alternative relief, and an offer to release to the defendant the strip covered by the defendant's wall on payment of

the damage caused by the appropriation. On the authority of Crocker v. Insurance Co., it is not necessary to direct an amendment. The court there said:

"It is quite possible to embody in a judgment a protection of defendant's right to maintain its wall on the payment of damages without requiring a grant of the easement, but the result is not different if the easement be conveyed; and in Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584, it was decided that the execution of the conveyance was appropriate and proper."

A court of equity, having once obtained jurisdiction of a case, will administer all the relief which the nature of the case and the facts demand. Where, under conditions already stated, permanent damages are awarded, it is only just that a conveyance be made by the defendant. In Amerman y. Deane it was said, "Whilst this requirement may not be necessary to bar a further action for damages, it seems but just, under the circumstances and in view of the liberal award made, that the release should be given;" and the judgment below was so amended. It must be remembered that a willful trespasser cannot in this way acquire an inch of land because the mandatory injunction must issue as to him; that in other cases where the injury to the plaintiff is irreparable the mandatory injunction will issue, and permanent damages will not be awarded; that where the granting of an injunction would work greater damage to an innocent defendant than the injury from which plaintiff prays relief the injunction could be refused absolutely, and the plaintiff compelled to seek his remedy at law. In such case the plaintiff would have to proceed either in ejectment, where the sheriff might not consider it his duty to deliver possession by taking down the wall (Bowie v. Brahe, 4 Duer, 676; Baron v. Korn, 127 N. Y. 224, 228, 27 N. E. 804), and it would be impracticable, if not impossible, for the plaintiff to regain actual possession of the strip occupied by the wall, or by successive actions for the continuing trespass, where damages only could be awarded to the time the action was commenced (Uline v. Railroad Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661). But in equity, in order to do full justice between the parties, the plaintiff is awarded such full compensation as will make him whole, and the defendant is given the opportunity to pay the same, instead of taking down his wall. The plaintiff cannot be permitted to both receive the value and keep the land. He has preferred to seek the equitable interposition of this court, and he must himself do equity.

The plaintiff is awarded a decree in the alternative. The plaintiff may execute, acknowledge, and deliver to the defendant, within 30 days after entry of judgment, a deed of the strip of land covered by the encroachment, releasing all damage occasioned thereby, the form of such instrument to be settled on notice; and thereupon the defendant shall pay the plaintiff the sum of $600, compensation for the injuries sustained, together with the costs of this action. In the default of such payment the mandatory injunction prayed for shall issue. In case of failure of plaintiff to execute and tender the instrument as above described, the prayer of the plaintiff for equitable relief must be denied.

Judgment accordingly.