JAMES A. McGRAW, Plaintiff, *v.* GEORGE SELKIS and Others, Defendants.

JOHN F. DOYLE, Purchaser.*

Supreme Court, Saratoga County, January 16, 1935.

---

* Published with approval of court.— [REP.

*Patrick J. Keniry*, for the plaintiff.

*Doyle & Heffernan [John F. Doyle of counsel],* for the defendants George Selkis and another.

*John F. Doyle,* purchaser in person.

*James A. McGraw,* plaintiff in person.

*Irving J. McGraw,* defendant in person.

ARTHUR H. VINETT, Referee. Pursuant to the judgment of foreclosure and sale herein the sale was duly advertised and the mortgaged premises were purchased on November 12, 1934, by John F. Doyle for $13,500. The purchaser executed the memorandum of sale, paid ten per cent of the purchase price, and in compliance with the terms of sale agreed to pay the residue of the purchase money on November 22, 1934. At the time and place fixed for the closing and delivery of the referee's deed, the purchaser was not present in person, but was represented by his law partner, James G. Heffernan. The referee tendered his duly executed deed effectual to convey the right, title and interest of the defendants to all of the mortgaged premises adjudged to be sold and which

were described in said deed by a description identical with that set forth in the amended complaint, judgment and advertisement of sale. Such deed, so tendered, was not accepted, the reasons therefor appearing from a letter written by the purchaser under date of November 21, 1934, and delivered to the referee at the closing: " I herewith tender to you as such referee the sum of $12,150, being the balance of the amount which I bid for the premises described in the judgment of foreclosure in the above mentioned action, and I demand delivery to me of a conveyance of said premises. Since the time of the sale I have learned that the filling station which faces on Central Avenue at the rear of the premises described in said judgment, encroaches sixteen feet, more or less, upon the premises for which I bid. In view of this condition, I refuse to accept the conveyance in the form tendered by you. The tender of $12,150, which I referred to in an earlier paragraph, is being made by me for the delivery of a deed which will convey to me a good and marketable title to the premises described in said judgment."

Upon the purchaser's failure to complete, plaintiff now moves for an order directing him " to complete his purchase, or, in the alternative, for such other and further relief in the premises as to the court may seem just and proper." By a cross-motion, the purchaser moves for an order relieving him of his purchase, for the return of the money paid by him to the referee, " and for such other and further relief as may be just." Decision of both motions has been reserved and the present reference ordered to ascertain the extent of the encroachment upon the premises purchased at such judicial sale, the value of such encroachment, the value of the land upon which said encroachment has been constructed, and the amount of damages, if any, that such purchaser will sustain by reason of such encroachment. All of the interested parties are before the court, including James A. McGraw and Irving J. McGraw, the owners of the adjoining premises at the rear, a part of whose building constructed thereon is alleged to encroach upon the premises in question here. Under the broad prayer for relief in both motions, the court may, therefore, adjust the equities between the parties.

From a map in evidence it appears that the mortgaged premises so sold consist ot a plot situated in the city of Mechanicville, with a frontage of 60 feet on Main street, and extending westerly along the south line 244 feet to the abandoned Champlain Canal, which is now laid out as a street known as Central avenue, the width at the rear of the lot being 120 feet; the north line extends easterly approximately 116 feet to a point, thence southerly 60 feet to a point, thence approximately 110 feet to Main street. There is

excepted from the amended complaint, judgment and sale a parcel at the northwest corner and rear of the mortgaged premises, with a frontage of 60 feet on Central avenue and 40 feet in depth conveyed by the defendants George Selkis and Helen Selkis to the plaintiff James A. McGraw and Irving J. McGraw by deed dated November 20, 1930. Excepting this latter parcel, the property sold by the referee herein contains 19,194 square feet. The property foreclosed is referred to in the testimony as the Selkis property and the excepted parcel as the McGraw property. The description and terms of sale were read at the sale by the referee.

At the time of the sale by the referee the Selkis premises were improved with a building fronting on Main street, occupied as an automobile salesroom and garage, with a dwelling apartment on the second floor. Also a storehouse. At the rear of these buildings there are 9,211 square feet of unimproved vacant land, approximately nine feet below the elevation of the sidewalk on Central avenue. At the southerly end there is a driveway from the rear of the garage to Central avenue.

Subsequent to their purchase in 1930, and prior to the commencement of this action, the McGraws constructed on their parcel a gasoline service station or lubritorium, the rear of which concededly encroaches to the east on the Selkis parcel. The height of the building is 19.2 feet. The extent of the encroachment by the lubritorium is 6.3 feet on the northerly end, and 6.5 feet on the southerly end for a distance of 35.1 feet, the width of the building. The roof extends another foot on the Selkis land making an area of 259.74 square feet actually covered by the encroachment. The land encroached upon is one seventy-fourth of the whole Selkis parcel and one thirty-sixth of Selkis' unimproved, vacant land at the rear of his buildings.

The only present access to the boiler room of the lubritorium is through a door at the rear which opens on to the Selkis property. To reach the same it is now necessary to trespass on Selkis' land. The pitch of the roof is also to the east so that, in the absence of gutters, drainage therefrom is thrown on Selkis' lands. A pipe leading from the lubritorium drains oil into a 550-gallon tank which has been placed on Selkis' lands ten feet east of said building and six feet underground. No proof is shown that these present trespasses affect the value of the property. In the absence of such proof, they may be disregarded. (*Merges* v. *Ringler*, 34 App. Div. 415; affd. on opinion below, 158 N. Y. 701; *Ungrich* v. *Shaff*, 119 App. Div. 843; *Gold* v. *Calderazzo*, 100 Misc. 598; *Noethinger* v. *Jeffries*, 108 id. 372, 377.)

As to the encroachment by the lubritorium, no claim by prescription is asserted by the McGraws. The purchaser does not attack the record title. No objection is made to the foreclosure proceedings. The land encroached upon has been charaterized as " nothing but a mud hole " always flooded by a heavy rain. There was from three inches to five inches of water thereon on December 19, 1934. The value of the entire Selkis land without buildings is testified to as from $3,500 to $5,500; the value of the 9,211 square feet of Selkis' vacant land at from $500 to $2,500, and the value of the 259.74 square feet encroached upon by the lubritorium at from $25 to $67.50. The latter figure of $67.50 is accepted as the reasonable value of the land encroached upon.

The purchaser proved that the reconstruction cost of that portion of the lubritorium constructed on the Selkis land is from $1,136.60 to $1,156.35. Such is not the measure of damages. The measure of damages is the difference between the value of the property with and without the encroachment. (*Amerman* v. *Deane*, 132 N. Y. 355; *Crocker* v. *Manhattan Life Ins. Co.*, 61 App. Div. 226; *Jacobus* v. *Willis*, 74 Misc. 591.) (See, also, *Corley* v. *Spitzer*, 235 App. Div. 703.) The rule is also stated that " the measure of damages is the amount by which the selling price of the premises trespassed upon is reduced by the wrongful act, and in determining the amount of damage the court may use its own judgment and experience aided by the evidence presented." (*Goldbacher* v. *Eggers*, 38 Misc. 36, 42; affd., 82 App. Div. 637; affd., 179 N. Y. 551. Selkis made no special or peculiar use of their vacant land which required the use of the strip encroached upon. Plaintiff's witnesses testified that the wall of the lubritorium increases the value of Selkis' remaining land because it acts as a retaining wall and keeps water, dirt and rocks from being washed in from Central avenue. The witness Hunt, however, concedes that the cost of constructing an abutting building would be increased by necessitating four corners at the rear instead of two if all of the remaining Selkis land were to be utilized. Such is also the testimony of the witnesses for the purchaser. No witness testified to any reduction in the selling price by reason of the encroachment. The Appellate Division, First Department, in *Crocker* v. *Manhattan Life Ins. Co.* (*supra*), at page 231 observed that so far as actual damage was concerned to the plaintiff by reason of an overhanging building, " It is not such as to deprive him of the *present beneficial use and enjoyment* of his building, nor will it deprive him of the *substantial benefit* of any structure which he may erect upon his land." (Italics mine.) In *Merges* v. *Ringler* (24 Misc. 317) the court with reference to the encroachment considered the practical use to which the property had been applied for many years.

The property was sold by metes and bounds and it is not claimed but that the purchaser will obtain a good title to all of the property included within the boundaries specified in the advertisement of sale. (*Merges* v. *Ringler*, 34 App. Div. 415, 418.) No adverse claim is made. There is no proof that the encroachment did actually impair to any extent the value of the property. The lubritorium, however it was caused to be constructed in the precise location selected, has been there for three or four years. This fact was known to the purchaser at the time of the sale, and he bid knowing the precise condition of the premises. He is chargeable with knowledge of what was apparent and obvious upon the premises. (*Williamson* v. *Brown*, 15 N. Y. 354, 362; *Riggs* v. *Pursell*, 66 id. 193, 199, 203; *Kingsland* v. *Fuller*, 157 id. 507, 510, 513.) The sale was made by the court through its officer, and the contract of the purchaser was with the court. No fraud is imputed. (*Riggs* v. *Pursell, supra*, p. 202.)

Although the purchaser's efforts to prove damages failed of fruition, he is not limited to the bare value of the land encroached upon. (*Goldschmid* v. *Mayor*, 14 App. Div. 135.) In the *Goldschmid* case the court said (p. 141): "It seems to be conceived by the appellant that it is only liable here for the actual value of the property taken, and that that value is to be estimated by finding out how much the land of the plaintiff was worth a square foot and charging the appellant with the number of square feet taken at that rate. But it is quite clear that this is entirely erroneous. The depreciation to a city lot by an encroachment upon it is not necessarily to be measured in that way. It depends entirely upon other considerations. If one builds a wall upon his neighbor's land, along the side or rear of it, it may be that the damages in that case would be largely measured by the amount of land taken, although other considerations would, undoubtedly, enter into the damages in such a case as that." The existence of the encroaching lubritorium is a continuing trespass. No proof by inference or approximation shows the cost of removing the same, or whether it would be expedient or inexpensive so to do. Suffice it to say that the moving papers disclose, among other things, that the plaintiff, joined in by Irving J. McGraw, offers to pay to the purchaser such sum as the court may deem just and proper or to remove so much of the lubritorium as encroaches. The purchaser is entitled to such a sum as based upon equitable considerations adequately compensates or indemnifies him for the defect, diminutions of title or power of enjoyment. (*Merges* v. *Ringler*, 24 Misc. 317, 320; affd., 34 App. Div. 415; affd., 158 N. Y. 701; *Sauter* v. *Frank*, 67 Misc. 657.) Stated differently, the purchaser is entitled to such full compensation as

will make him whole. (*Goldbacher* v. *Eggers, supra*, p. 43.) "In determining the amount of damage the court may use its own judgment and experience aided by the evidence presented." (*Goldbacher* v. *Eggers, supra*, p. 42.) Since the encroachment by the lubritorium covers but one seventy-fourth of the entire Selkis property, and being so located as not essential to the purchaser's enjoyment of the property, upon the entire case the damages are fixed at $250.

There remains the question of an alleged encroachment by a retaining wall at the rear of the property which is flush with the rear of the lubritorium and extends northerly from the building for twenty feet, with a return to the west for six feet across the Selkis plot and continuing across the McGraw plot. Another wall extends southerly from the building for forty feet with a return to the west for thirty-two feet across Selkis' plot. Taken in connection with the rear wall of the lubritorium for its entire width of thirty-five feet, the wall is continuous in a northerly and southerly direction for a distance of ninety-five feet, with an average height, exclusive of the building, of nine feet from the level of the Selkis plot to the level of Central avenue. The McGraws filled in with cinders on their lot, the fill extending easterly from their east line to the retaining wall. It appears from the moving papers that the retaining wall was constructed by Selkis on his own property, at his own expense and for his benefit. There is no evidence before me to the contrary. It does not constitute a defect in the title. (*Ungrich* v. *Shaff*, 119 App. Div. 843; *Merges* v. *Ringler*, 24 Misc. 317, 318.)