George L. Cobb, J.
The plaintiff is the owner of a parcel of land located on the southerly side of Central Avenue, in the City of Albany, which it uses for the sale of used automobiles. The plaintiff purchased this property from the defendants Robert K. Danker, Frederick A. Danker, Jr., Elizabeth N. Danker and David H. Danker, these defendants having acquired title to the premises from their father, Frederick A. Danker, Sr., and Lotta *547 K. Danker, Ms wife. The defendant Fred A. Danker and Sons, Inc., is the owner of land located on the southerly side of Central Avenue which adjoins plaintiff’s premises on the east.
In this action the plaintiff seeks a judgment declaring that it has a perpetual easement and right of way over the lands owned by the defendant Fred A. Danker and Sons, Inc. and it seeks to recover damages resulting from the obstruction of its alleged easement by the construction of a building thereon.
The easement which the plaintiff seeks to establish is over a strip of land running along plaintiff’s easterly boundary line, bounded on the north by Central Avenue and on the south by Eoseland Street, having a width of 60 feet and a depth of over 500 feet.
The complaint has been dismissed against the defendant Mechanics and Farmers Bank of Albany, as executor under the last wills and testaments of Frederick A. Danker, Sr., and Lotta K. Danker. On motion of the remaining defendants, the complaint was dismissed as to them and summary judgment granted in their favor, which judgment was reversed and the motion for summary judgment denied by the Appellate Division, Third Department (Yager Pontiac v. Danker & Sons, 28 A D 2d 61).
At the trial of this action by the court there was testimony by Murl H. Yager, the president of the plaintiff corporation and its sole stockholder, that on November 12, 1948 the plaintiff entered into a written contract with the individual defendants Danker to purchase for the sum of $45,000 the property which it now uses for the sale of used automobiles; that by the contract the sellers agreed to convey a parcel of land on the southerly side of Central Avenue having a depth of 500 feet and a frontage on Central Avenue of 313.71 feet; that the contract provided for closing of title on December 28, 1948; that the closing was not completed on December 28, 1948 because Mr. Yager refused to accept title for the reason that the deed presented to him described a parcel of land having 300 feet frontage on Central Avenue, rather than 313.71 feet as specified in the contract; that the closing of title was rescheduled for the afternoon of December 31, 1948, at which time the plaintiff accepted title and paid the agreed consideration and received two deeds, one from Frederick A. Danker, Sr., and Lotta K. Danker, his wife, to the individual defendants Danker, bearing date February 2, 1948, and the other from the individual defendants Danker to the plaintiff, bearing date December 31, 1948, both deeds containing identical descriptions of a parcel of land having a frontage on Central Avenue of 300 feet, and the plaintiff also received at that time, in addition to the deeds, a letter dated December *548 31, 1948 from Frederick A. Danker, Sr. to the plaintiff, which letter states as follows:
“ 776 Central Avenue,
Albany, New York,
December 31, 1948.
“ Yager Pontiac, Inc.
470 Central Avenue,
Albany, New York.
“Attention: M. H. Yager, President.
“Dear Mr. Yager:
"This will advise you that for and in consideration of acceptance of a deed from my children, of a 300 foot plot of land situate on the southerly side of Central Avenue, conveyance made as of this date,— Mrs. Danker and I will join in a deed to the City of Albany of a strip of land of not less than sixty feet in width, to run easterly from the easterly line of the property which was conveyed to you today as aforesaid, to Roseland Street, which strip of land shall be used solely for street opening purposes.
“We further agree in consideration of the foregoing, to later enter into any agreement which you and we mutually find agreeable for the formal opening and dedication of such street.
“ In the meantime, you may rely upon this letter as binding us, and our successors in title, so that you and your corporation may proceed with any plans which may be based upon the opening of such street at such time in the future as conditions may warrant.
“ Pending acceptance by the City of Albany of the intended conveyance of land for street purposes as hereinbefore recited, we do hereby bind ourselves, our heirs at law, next of kin, or successors in title to set aside a strip of land in perpetuity for mutual use for street purposes, and either of us may use it for such purpose at any time beginning immediately.
“ Herein I act as agent for Mrs. Danker.
“ Simultaneously, Fitzsimmons and Wilsey are taking up with the Office of the Corporation Counsel the matter of taking such steps as may be necessary to effectuate the plan herein outlined.
“Very truly yours,
“Fred A. Danker Frederick A. Danker.
“ Witness:
W. E. Fitzsimmons.
“ Confirmed:
Fitzsimmons & Wilsey
By: W. E. Fitzsimmons.”
The plaintiff relies on this letter for the existence of its claimed easement. The letter meets the requirements of section 243 of the Real Property Law.
This letter was received in evidence at the trial, subject to the motion of defendants’ attorney to strike it from evidence on the grounds that a proper foundation was not laid for its introduction into evidence and that it constituted a personal transaction with Frederick A. Danker, Sr., who is deceased, and, as such, was inadmissible under CPLR 4519. The court *549 reserved decision on this motion. Since the authenticity of the letter was not in dispute, the defendants having admitted that it was signed by said Frederick A. Danker, Sr., and since the letter itself did not constitute testimony that would be barred by CPLR 4519 (Matter of Seaman, 275 App. Div. 484, 491, affd. 300 N. Y. 756), it was properly received in evidence. Accordingly, the motion is denied.
It appears that the description contained in the deed received by the plaintiff from the Danker children makes reference to an unopened street “ now unofficially known as Van Burén Avenue, connecting Central Avenue and Roseland Street ’ ’ located along the easterly line of plaintiff’s premises. In addition, two maps were received in evidence, one dated January 31, 1949 and the other dated April 4,1955, both of which show Van Burén Avenue as a proposed street 60 feet in width running along the easterly boundary line of plaintiff’s premises. It is undisputed, however, that the City of Albany never accepted the proposed street which was referred to in the letter of December 31, 1948 and which appears to have been privately designated as Van Burén Avenue.
On December 31, 1948, the date of the aforesaid letter, Frederick A. Danker, Sr., was the owner of the property adjoining plaintiff’s premises on the east, over which plaintiff claims the easement. Frederick A. Danker, Sr., and Lotta K. Danker, his wife, conveyed this property to the defendant Fred A. Danker and Sons, Inc., by a warranty deed dated December 29, 1956 and recorded on February 21,1957, which deed was not made subject to an easement and contained no reference to an easement. Frederick A. Danker, Sr., died on June 1,1961, and his wife, Lotta K. Danker, who had only a dower interest in the premises conveyed to the corporate defendant, died on April 28, 1963.
In 1965, by a written lease dated February 25, 1965 and recorded on March 9, 1965, the defendant Fred A. Danker- and Sons, Inc., leased to the National Toddle House Corporation, for a term of 25 years commencing April 1, 1965, a lot fronting 60 feet on Central Avenue and 200 feet deep, being a portion of the premises over which the plaintiff claims an easement, and the lessee thereafter erected on the leased parcel a building which it uses for restaurant purposes, with the result, as alleged by plaintiff, “ that the plaintiff has been totally excluded from and denied access to and use of the said easement ”. It is not disputed that the National Toddle House Corporation entered into the lease without notice of the letter of December 31, 1948 under which plaintiff claims an easement.
*550 The defendants contend that the letter of December 31, 1948 did not constitute the grant of an easement and that the “ use ” contemplated by the instrument must be construed to be not more than a license. A license, however, is merely a personal privilege to enter upon the land of another to do some act or acts; it is distinct from ownership in land and does not imply an interest in land. (17 N. Y. Jur., Easements and Licenses, § 3; Nemmer Furniture Co. v. Select Furniture Co., 25 Misc 2d 895.) A privilege or license “ sometimes loosely described as an ‘ easement in gross ’ ” (Loch Sheldrake Assoc. v. Evans, 306 N. Y. 297, 304) will not be presumed where it can fairly be construed to be appurtenant to land (Wilson v. Ford, 209 N. Y. 186, 196). An easement is a right or privilege which one parcel of land yields up to another parcel of land as an easement appurtenant ; it contemplates the existence of a dominant estate and a servient estate; it is a burden imposed on corporeal property and not upon the owner thereof. (Antonopulos v. Postal Tel. Cable Co., 261 App. Div. 564, 568, affd. 287 N. Y. 712.) It is a permanent right authorizing one landowner to do or maintain something on the adjoining land of another, which, although a benefit to the land of the former and a burden on the land of the latter, is not inconsistent with general ownership. (Trustees of Southampton v. Jessup, 162 N. Y. 122, 126; Long Is. R. R. Co. v. Garvey, 159 N. Y. 334, 338.)
Considering the nature of an easement, as defined by the courts, it is found that by the language of the paragraph of the letter of December 31, 1948, wherein it is stated that “we do hereby bind ourselves, our heirs at law, next of kin, or successors in title to set aside a strip of land in perpetuity for mutual use for street purposes, and either of us may use it for such purpose at any time beginning immediately”, an easement was created. By the words “ [p] ending acceptance by the City of Albany of the intended conveyance of land for street purposes ”, the grantor recognized that if the city accepted the street the grant would no longer be a private easement and the ‘ ‘ mutual use ” would then be merged into public use.
This finding is consonant with the decision, in Yager Pontiac v. Danker & Sons (28 A D 2d 61, 64 — 65, supra) in which, in referring to the letter of December 31, 1948, and after discussing other quoted paragraphs of the letter, it is stated that “ [t]he last paragraph, however, does purport to give the plaintiff an immediate mutual use of the strip of land ‘ for street purposes ’ ” and “ [w]hile the dedication was conditioned upon subsequent acceptance of the street by the city, the last paragraph of the letter establishing a perpetual easement was not so limited ”.
*551 Accordingly, judgment is directed determining and declaring that, by the letter of December 31, 1948 the plaintiff acquired from Frederick A. Danker, Sr., a grant of a perpetual easement in a strip of land now owned by the defendant Fred A. Danker and Sons, Inc., running along the easterly boundary of plaintiff’s property, bounded on the north by Central Avenue and on the south by Roseland Street, having a width of 60 feet, as more particularly described in the prayer for relief of the complaint, which easement is for mutual use for street purposes.
The court having determined that the letter of December 31, 1948 was a grant of a present interest in real property, this action is not governed by the six-year Statute of Limitations (CPLR 213), as alleged by the defendants.
The defendants further contend that any easement which the plaintiff may have acquired by the letter of December 31, 1948 was terminated by the recording on February 21, 1957 of the deed from Frederick A. Danker, Sr., and Lotta K. Danker, his wife, to Fred A. Danker and Sons, Inc., since the deed made no reference to the easement and the defendant corporation did not have actual or constructive notice of the easement.
The plaintiff has shown, however, that the defendant Fred A. Danker and Sons, Inc., was incorporated in 1947 and that it is the Danker family corporation, the directors and subscribers at the time of its incorporation having been Frederick A. Danker, Sr., Lotta K. Danker, and the four Danker children, the individual defendants, and that the corporation’s only officers, directors and stockholders at any of the times involved in this litigation were Frederick A. Danker, Sr., Lotta K. Danker, and the four Danker children. It is not disputed that at the time of the conveyance by Frederick A. Danker, Sr., and Lotta K. Danker, his wife, to the defendant Fred A. Danker and Sons, Inc., Frederick A. Danker, Sr., was the president of the corporation and a director and major stockholder thereof. It has also been shown that from the time of its incorporation until his death on June 1,1961 Frederick A. Danker, Sr., was a stockholder, director and the president of Fred A. Danker and Sons, Inc., and that during all of that time he was the chief directing force of the corporation and the person who managed its affairs. Under these circumstances, the knowledge of Frederick A. Danker, Sr., as the grantor of the easement, must be imputed to the corporation of which he was president and a director and stockholder, and the corporation must be charged with such knowledge. (Matter of Brown, 252 N. Y. 366, 373-374, 378.) The court, therefore, finds that the defendant Fred A. Danker and Sons, Inc., took title to its property subject to the easement *552 rights of the plaintiff therein. Furthermore, there is credible testimony in the record from which it can be fairly inferred that the defendant Fred A. Danker and Sons, Inc., through its officers, had actual knowledge of the existence of the letter of December 31, 1948 at the time it entered into the lease with the National Toddle House Corporation in 1965.
With regard to the issue of damages, the defendants have taken the position that the plaintiff cannot recover permanent damages and that its recovery, if any, in this action, under the rule laid down in Uline v. New York Cent. & H. R. R. R. Co. (101 N. Y. 98) must be limited to loss of rental value or such temporary damages as the plaintiff has sustained up to the time of the commencement of the action. In determining the rule of damages as to trespasses on land, the courts have held that in cases where the defendant has no power to condemn the property, two remedies are open to the plaintiff: an action at law for damages, or a suit in equity for an injunction and damages. In the action at law the plaintiff may recover only such temporary damages as have been sustained up to the time of the commencement of the action, and he then has the right to bring successive actions until the defendant abates the nuisance; while in the suit in equity plaintiff recovers only his damages up to the entry of the judgment and secures an injunction to prevent any future trespass. (Stowers v. Gilbert, 156 N. Y. 600.) In the application of this rule, the courts have held generally that permanent damages may not be awarded in those cases where the plaintiff is entitled to the abatement of the nuisance or to an injunction, for the reason that it may not be presumed that the obstruction will not be removed or that the illegal conduct of the defendant will continue (see Dietzel v. City of New York, 218 N. Y. 270; Stowers v. Gilbert, 156 N. Y. 600, supra).
It has been held, however, that a suit may be entertained in equity to prevent a multiplicity of actions, and if the plaintiff’s injury can be shown to be reparable by a money compensation the court may award compensatory damages, or, in the alternative, a permanent injunction. (Pappenheim v. Metropolitan El. Ry. Co., 128 N. Y. 436; Henderson v. New York Cent. R. R. Co., 78 N. Y. 423.) And where it is warranted by special circumstances, or where an obviously inequitable result will follow the granting of a permanent injunction, permanent damages may be awarded. (Goldbacher v. Eggers, 38 Misc. 36, affd. 82 App. Div. 637, affd. 179 N. Y. 551; Lyle v. Little, 28 App. Div. 181; see, also, Amerman v. Deane, 132 N. Y. 355.) Such award of damages may be made, however, only in lieu of the permanent *553 injunction to which a plaintiff is entitled. (St. George’s Syrian Cath. Church v. Eisenstein Assoc., 34 A D 2d 947.)
It is clear that, were it not for the special circumstances of this case, the plaintiff would be entitled to a permanent injunction to remove the building which now obstructs its easement. The plaintiff, however, has not sued for an injunction, because of the intervening bona fide rights of the lessee, the National Toddle House Corporation, which, under its lease with the defendant corporation, has constructed the building and lawfully continues in possession of the leased property which is subject to the easement. Instead, the plaintiff has sought the equitable jurisdiction of the court, and, as a condition of an award of permanent damages, has tendered all of its rights and interests in the easement property. A court of equity once having obtained jurisdiction of the parties and the subject matter of an action, will retain it and adapt the relief to the exigencies of the case. It may order a sum of money to be paid to the plaintiff and give him a personal judgment therefor when that form of relief becomes necessary in order to prevent a failure of justice and when it is for any reason impracticable to grant the specific relief demanded. (Valentine v. Richardt, 126 N. Y. 272, 277.) Since the injunctive relief to which the plaintiff would be entitled is not available to it, the court is of the opinion that this is an appropriate case for an award of permanent damages.
In support of plaintiff’s claim for damages, there was testimony at the trial by a real estate expert witness for the plaintiff, who testified that in his opinion the market value of plaintiff’s fee-owned land in February, 1965, was $210,000, based on a front-foot value of $700; that the fee-owned land was enhanced in value by the easement which gave the land a corner influence, thereby increasing its value by 15% to a total of $241,500; that plaintiff’s rights in the easement itself were worth one half of the front-foot value of the fee-owned land, or $350 per foot, which for 60 feet would amount to $21,000, of which one half, or $10,500 would represent plaintiff’s easement rights; from all of which the witness arrived at a total market value for plaintiff’s property before the obstruction of the easement of $252,000; and it was his opinion that the value of the property after the impairment of the easement is the total value less the sum of $31,500 for the enhancement thereof by the easement and less the sum of $10,500 for the loss of use of the easement itself, for total damages of $42,000. The defendants offered testimony by an expert witness who testified that in his opinion the plaintiff’s easement had no value whatsoever. He did, how *554 ever, concur in the valuation of $700 for front-foot fee value of property bn Central Avenue.
In the opinion of the court, the plaintiff may not recover damages for the claimed enhancement in value of its property by the possibility of the easement giving its land a corner influence. The testimony of plaintiff’s expert concerning loss of corner influence is speculatve and conjectural and will not be considered by the court in fixing plaintiff’s damages.
Accordingly, plaintiff’s permanent damages, measured by the difference between the market value of its property before the impairment of the easement, which the court finds to be $220,500, and the market value of its property after such impairment, which the court finds to be $210,000, are fixed at the sum of $10,500, with interest thereon from April 1, 1965. This award of permanent damages against the defendant corporation is conditioned, however, on the execution and delivery by the plaintiff to the defendant corporation of a deed of all its right, title and interest in the strip of land which is subject to the easement.